LASSWELL LAND & LUMBER CO. v. LEE WILSON & CO. *

(Circuit Court of Appeals, Eighth Circuit. August 24, 1916.)

No. 4621.

1. APPEAL AND ERROR ⊙⇒878(6)—REVIEW—QUESTIONS PRESENTED FOR REVIEW.

Where defendant did not appeal from a decree awarding it affirmative relief, the propriety of the denial of some of the relief sought by defendant cannot be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3576, 3577; Dec. Dig. ⊙⇒878(6).]

2. SALES ⊙⇒77(1)—CONSTRUCTION OF CONTRACT—PRICE.

A contract for the sale of lumber provided that the buyer should, on the seller's manufacturing the lumber, advance 50 per cent. of the purchase price; that the lumber should be stacked for six months when delivery should be made, and the balance of the contract price paid, less 2 per cent., the same to be in full payment. Held, that as the parties in previous dealings treated the 2 per cent. clause as providing for a deduction of 2 per cent. of the entire contract price, that construction will, the provision being ambiguous, be followed, and the buyer is justified in deducting from the last installment 2 per cent. of the entire purchase price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 208, 209, 211; Dec. Dig. ⊙⇒77(1).]

3. SALES ⊙⇒43(1)—RESCISSION BY BUYER—RIGHT TO RESCIND.

Defendant, the buyer of lumber which was to be stored in the seller's yards and shipped out within six months, in making sales to its customers billed out the lumber shipped at amounts in excess of those reported to the seller. The overbilling and overcharging of invoices to defendant's customers was for the purpose of preventing them from raising unreasonable and captious objections concerning the quality and quantity of lumber invoiced to them. There was no showing that defendant, whose duty it was to scale and measure the lumber, did not report to the seller the true amounts shipped. Held, that there was no such misconduct on the part of defendant as would justify the seller in rescinding the contract

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied December 4, 1916.

and defendant was entitled to relief on account of the seller's rescission, despite its misconduct as to others.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 86, 89, 92, 97–99; Dec. Dig. ☞43(1).]

4. APPEAL AND ERROR ☞1022(1)—REVIEW—REPORT OF MASTER.

A report of the master approved by the trial judge is presumptively correct, and will not be disturbed by the appellate court, unless some obvious error of law or serious mistake in considering the evidence has occurred.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4015, 4017, 4018; Dec. Dig. ☞1022(1).]

5. CORPORATIONS ☞661(2)—FOREIGN CORPORATIONS—DOING BUSINESS WITHIN THE STATE.

Where a foreign corporation, doing business in the state without compliance with Rev. St. Mo. §§ 3039, 3040, so as to entitle it to sue on its contracts, made advances under a contract of sale, it may, on the seller's wrongfully rescinding the contract, recover back the advances, such action not depending on, or being an assertion of, the validity of the contract, but being one in assumpsit for money had and received.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2536, 2539; Dec. Dig. ☞661(2).]

6. EQUITY ☞66—MAXIMS.

A seller of lumber, which received advances from a foreign corporation doing business in the state, cannot, having sought equitable relief against a replevin suit by the corporation, defeat the corporation's crossbill to recover the advances, on the ground that the corporation had not complied with the laws of the state as to doing business, and could not sue on the contract, for he who seeks equity must do equity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 188–190; Dec. Dig. ☞66.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by the Lasswell Land & Lumber Company against Lee Wilson & Co., which filed a cross-bill. From a decree for defendant, complainant appeals. Affirmed.

R. P. Williams, of St. Louis, Mo., and J. P. Tribble, of Kennett, Mo. (C. B. Williams, of St. Louis, Mo., on the brief), for appellant.

Frank H. Sullivan, of St. Louis, Mo. (Allen Hughes, of Memphis, Tenn., on the brief), for appellee.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

ADAMS, Circuit Judge. This was a suit in equity, brought in the district court by the Lasswell Land & Lumber Company, appellant, against Lee Wilson & Co., appellee, to enjoin the prosecution of a replevin suit before then instituted by the Wilson Company against the Lumber Company to recover possession of certain lumber in the possession of the latter company, for an accounting concerning the matters involved in the replevin suit, for a decree in its favor for the amount to be found due, and general relief.

Plaintiff, in its bill, alleged: (1) That the Wilson Company was a

foreign corporation organized under the laws of the state of Arkansas, and engaged in the transaction of business in the state of Missouri without having filed with the secretary of state a certified copy of its charter and given the other information required by section 3039 of the Revised Statutes of Missouri requisite to secure a license to do business in Missouri, and for that reason the defendant was, by the provisions of section 3040 of the Revised Statutes, barred from maintaining any action against it; (2) that the replevin suit arose out of a contract, dated March 14, 1910, by the provisions of which the Wilson Company had agreed to purchase from the Lumber Company a large quantity of lumber, to be manufactured within the period of one year thereafter to ensue by the latter company, and stacked in its yards at its sawmill located in Missouri, for the Wilson Company, and had agreed to make monthly advances to the Lumber Company of about 50 per cent. of the value of such lumber as had been manufactured and stacked during the previous month, such advances to be evidenced by promissory notes of the Lumber Company given to the Wilson Company for the several advances as and when made, and had agreed to ship out the lumber within six months after it should be manufactured and stacked, at which time it was agreed that each stack should be accurately inspected and measured and full payment made of any sums due over and above the advances made.

Plaintiff further alleged in its bill that the Wilson Company had breached the contract by failing to take possession and ship out the lumber within six months from the date it was manufactured, as result of which the Lumber Company was required to execute its notes from time to time for the amounts of such advances and obligate itself to pay interest thereon to the Wilson Company at the rate of 6 per cent. per annum from the time the advances were made until the lumber should be shipped and final settlement made, and had further breached the contract and committed fraud upon the plaintiff's rights, in that it had made inaccurate and false inspections of the lumber when shipped out to its customers or vendees, and had rendered false reports and invoices to plaintiff as to the quantity of lumber shipped, reporting to plaintiff a less amount than was in fact shipped, and in some other respects had failed to comply with its provisions.

Plaintiff further alleged in its bill that defendant had not fully paid for the lumber replevied and was therefore not entitled to its possession, and that it had been greaty damaged by the foregoing breaches of the contract and frauds perpetrated by the defendant, and could not secure redress for the same in the replevin suit.

Plaintiff prayed for an injunction restraining the prosecution of the replevin suit until this suit should be heard, for cancellation of the promissory notes executed by it to the Wilson Company for advances made, and for an accounting "between this plaintiff and the defendant of all their actions and dealings in connection with the purchase and sale of the lumber aforesaid; that such account be taken under the direction of the court and the condition thereof ascertained and stated"; and that plaintiff have judgment for such sum as may

be found due to it from defendant growing out of the transactions hereinbefore set forth, and for general relief.

A temporary restraining order was issued by the court, as prayed, and a receiver appointed to take possession of the lumber in question and sell the same.

Defendant, for answer to the bill, admitted that it was a foreign corporation, and had not secured a license to do business in Missouri, but denied that it was carrying on business in Missouri within the meaning of the Missouri statute, averring that the transaction out of which the suit arose was one in interstate commerce. It denied each and every wrongful act imputed to it by the plaintiff, and alleged that an accounting between the parties would show a balance due it of some $7,000, for which it prayed judgment against plaintiff. It also filed a cross-bill, asking that its answer be taken as part thereof, in which it set forth the terms and provisions of the contract of March 14, 1910, substantially as stated in the bill, and alleged that it had at all times kept and performed the stipulations obligatory upon it, and had made advances of money to the Lumber Company on estimates of lumber stacked for it in excess of the price agreed to be paid therefor, as shown by an itemized account filed with the cross-bill. This account, it was averred, shows certain lumber received from and advances made to a firm by the name of Lasswell & Crider, plaintiff's predecessor in business, on contracts similar to that of March 14, 1910, between plaintiff and defendant; that these contracts had been partly performed by Lasswell & Crider and partly by their successor (the plaintiff), the vendor's obligation in which, it is alleged, had been assumed by the plaintiff.

Defendant further alleged that on February 24, 1911, plaintiff not then having manufactured, stacked for, and delivered to it the full amount of lumber it had agreed to do, then well knowing that the value of the lumber in the yard was not sufficient to repay the defendant the advances then before made by it, breached the contract by refusing to make further delivery of lumber to it or permit it to take possession of and ship out the lumber that was there stacked for it, and seized and converted to its own use the lumber then stacked in its yards belonging to the defendant, according to the terms of the contract, falsely pretending that the defendant had been at fault and had defrauded it in the matter of certain prior shipments and their inspection, and later notified defendant that it renounced its obligation under the contract of March 14, 1910, and proposed to sell the lumber then stacked in its yards for the defendant to other parties. Defendant then set forth its damage for breaches of the contract, alleging the same to have been $7,000, and prayed for a decree accordingly, and for general relief.

Plaintiff filed a plea to this cross-bill, again alleging that the defendant was a foreign corporation and had not complied with the laws of Missouri in the matter of domestication, and was not, for that reason, entitled to invoke the aid of the court for any purpose. The court heard this plea and overruled it. Plaintiff then filed an answer to the

cross-bill, among other things, admitting its refusal to perform the contract after February 24, 1911, alleging as reason therefor that the defendant had made false statements and rendered false accounts to plaintiff, as stated in its bill, and in other respects denied the allegations of the cross-bill.

The cause was then referred to Hon. Hugo Muench, as special master, to hear the proof, make findings of fact and conclusions of law for the advice of the court. The master, after a full hearing, stated an account between the parties, as prayed for by them. He disallowed to plaintiff any damages arising from the alleged failure of defendant to ship out the lumber promptly after it had remained in plaintiff's yards six months, disallowed to the defendant any damages alleged to have accrued to it by reason of the increase in market value of lumber after plaintiff's refusal to deliver lumber over and above the price agreed to be paid to it by defendant, then, crediting plaintiff with the purchase price of all lumber delivered to defendant in the execution of the contract so far as deliveries were made, and charging plaintiff with all moneys paid to it by defendant as advance payment for lumber afterwards to be delivered, and disposing of some minor and additional items of controversy, found a balance in favor of the defendant of $7,263.79, and, finding the other issues joined in favor of defendant, recommended a decree in its favor for the amount so found. Exceptions filed to the master's report were heard and overruled by the court, the report confirmed and final decree rendered dismissing plaintiff's bill for want of equity, and rendering judgment for defendant on its cross-bill, as recommended by the master. From this decree plaintiff alone appeals.

The errors assigned are numerous, but the ones relied on in the briefs of counsel, as required by our rule 24 (188 Fed. xvi, 109 C. C. A. xvi), and urged in argument, are comprehended within the following questions:

(1) Was the transaction between plaintiff and defendant, out of which the controversy between them arose, a transaction in interstate commerce?

(2) If not, do the facts of the case permit the defendant to invoke the aid of the court as it did in its cross-bill?

(3) Did the conduct of the defendant in the matter of making inspections of lumber and reporting the same to the plaintiff damage the plaintiff or justify it in renouncing the contract of March 14, 1910, before its full performance, and refusing further performance thereof?

(4) Was it of such character as precluded the defendant from invoking the aid of a court of equity in its cross-bill for redress, because not approached with clean hands?

(5) If these issues are found for the defendant, was the account, as stated by the master in his report and the judgment as rendered thereon, for the correct amount?

There are some other incidental issues affecting the accounting which will be disposed of in the course of the opinion.

The facts bearing on the first question, for our consideration, are substantially these: Plaintiff was a Missouri and defendant an Arkansas corporation. Plaintiff was a manufacturer of lumber at its sawmill, located in Arbyrd, Mo.; defendant was a buyer of and dealer in lumber, doing business in Memphis, Tenn. These parties negotiated a contract in Missouri, and defendant executed it in Memphis, Tenn. By it plaintiff agreed to manufacture, in Missouri, about 2,000,000 feet of lumber for defendant, stack the same in its millyard in Arbyrd for defendant, which act, it was agreed, should constitute a delivery of the lumber to defendant, there to remain for a period of about six months to dry, and then be shipped by defendant to its customers to whom it might have sold the same. Defendant kept an inspector in Arbyrd, Mo., where the sawmill was operated, to inspect the lumber as and when stacked by plaintiff, for the purpose of estimating the amount of advance to be made by defendant on the contract price when the lumber should be stacked, and for the purpose of measuring and superintending the shipping of lumber when dried and sold by defendant to its customers. Defendant sent soliciting agents into Missouri and other states to solicit orders for the lumber, and in this way intended to sell, and did sell, its lumber. When the contract was made defendant had no particular intention of selling lumber at St. Louis, Mo., or at any other one place, but did intend to dispose of it wheresoever it could do so most advantageously. Defendant had not, before making or executing this contract, secured a license to do business in Missouri as required by section 3039 of the Revised Statutes.

Did the transaction in question, conducted in the way, under the circumstances and for the purposes just stated, constitute interstate commerce? The majority of the court is of opinion that the transaction constituted interstate commerce, and, as such, was exempt from the operation of the Missouri statute. The minority thinks it was in no inconsiderable degree a local or intrastate transaction, constituting "doing business" in Missouri within the true meaning of its statute, and, as such, was not exempt from its requirements. But as we are of one opinion on the second question, and as this is controlling of the judgment in the case, we shall not rest our decision on any definite answer to the first question. Answers to some of the other questions, affecting the accounting, will first be disposed of.

[1] On February 24, 1911, the plaintiff repudiated the contract of March 14, 1910, and refused to make further deliveries of lumber to defendant. (This is admitted in the pleadings.) At that time less than one-half of the lumber called for by the contract had been delivered to defendant, and 700,000 feet were stacked for defendant in plaintiff's yard. On this last-mentioned amount of lumber the provisional estimates had been made, and about 50 per cent. of its value advanced by defendant to plaintiff, as agreed. These facts are not disputed. For the amount of these advances and the further sum of $5 per thousand feet, as damages occasioned by the increase in market value of the lumber over and above the price agreed to be paid, defendant sought recovery in its cross-bill. This claim for damages was

denied by the master, and defendant not appealing relieves us from further consideration of it.

Plaintiff claims to have sustained damage in the sum of $300 by reason of defendant's delay in shipping out some cottonwood lumber within the period of six months fixed in the contract for such shipment. The master found that the proof fails to sustain this claim. In this we think he was right, and the same was properly disallowed to plaintiff in the accounting.

[2] Plaintiff claims that defendant, in making settlements for lumber delivered to it, unlawfully deducted 2 per cent. from the gross price of all lumber so delivered, instead of from the balance due to plaintiff over and above that which had been theretofore paid on preliminary estimates. This dispute calls for the construction of one of the provisions of the contract of March 14, 1910. After providing for the stacking of the lumber as and when sawed by plaintiff, for the estimation of its value by inspectors chosen by each party (afterwards by supplemental agreement by inspector chosen by Wilson & Co. alone), for the payment of about 50 per cent. of the purchase price by the Wilson Company as an advancement, for the remaining of the lumber in the stacks for about six months, for loading it on railroad cars by plaintiff and the payment of the balance of the contract price due plaintiff, the contract, in paragraph 5, uses this language: " * * * Less 2% (two per cent.), the same to be in full payment thereof." This provision is ambiguous and vague, and, taken by itself, might be unenforceable, but, read in connection with other provisions of the contract, discloses, in our opinion, that the parties undertook to finally conclude the question of price, by making at the close of the deal a uniform deduction of 2 per cent. upon the contract price of the entire amount of lumber sold and delivered. This conclusion is reinforced by the conduct of the parties. In their previous dealings they had made similar contracts containing this same 2 per cent. clause, and had treated it as requiring a deduction upon final settlement of 2 per cent. from the whole contract price. A familiar rule, governing the construction of a contract, and one frequently applied by us, in cases of doubt requires us to adopt a construction which the parties themselves, in their regular course of dealing, may have placed upon it. This is a reasonable rule, and cannot work injustice. We think there was no error in allowing the additional 2 per cent. as done.

[3] Plaintiff contends that defendant, upon whom, by supplemental agreement of the parties, the duty was imposed to be solely responsible for correct inspections and measurements of the lumber as it was shipped out, made inaccurate and false inspections and measurements, to the injury of plaintiff, and that this misconduct not only misrepresented the actual amount of lumber received by defendant, for which plaintiff should have credit, but justified it in refusing further performance of the contract, and was of such deliberate, intentional, and fraudulent character as should close the portals of a court of equity against defendant on the equitable ground that it does not approach them with clean hands. There is little, if any, evidence tend-

ing to show that the inspector of defendant fraudulently underestimated the amount of lumber actually received by his company from plaintiff, or failed to report to plaintiff the true amount of lumber so received. If any unintentional errors were made, the master, as he says, corrected them in stating his account. There is evidence tending to show that the amount of lumber billed and charged to defendant's customers as carloads, shipped out by the inspector of defendant from the yards of plaintiff, exceeded the amount reported to plaintiff as contained in those cars and for which it received credit in its account with defendant. Counsel for the latter earnestly contend that there is no proof that any false or fraudulent inspection or any false report thereof was made to plaintiff, but, conceding that there is proof of overbilling carload shipments and of overcharging invoices to defendant's customers, seek to explain that conduct on the ground that there was a common practice by wholesale dealers in lumber to overbill shipments to their customers because of the latter's disposition to raise unreasonable and captious objections concerning the quantity and quality of lumber invoiced to them, and claim that whatever dishonesty may have been practiced by defendant in its dealings with its vendee customers ought not, in any manner, to redound to the credit of the plaintiff, and, also, that such dishonesty is not so related to or connected with the transaction between the plaintiff and defendant as to bring it within the clean-hands doctrine so as to affect defendant's right to seek, through a court of equity, reparation for wrong and injury done to it by plaintiff.

These were the views taken by the master and the court below. They held that there was no such misconduct by defendant as justified plaintiff in rescinding the contract. They also held that any such errors made in the invoices to customers only, however fraudulent they might have been, cannot, of themselves, close the doors of a court of equity to the defendant for such redress as its case warrants. There was, in our opinion, no error in these holdings. The improper conduct, which repels a court of equity, must inhere in the transaction itself concerning which the parties are litigating, and cannot be predicated of general obliquity or misconduct or inequitable or wrongful treatment of others than the parties litigating.

[4] After reaching the foregoing conclusions and in accordance with them, the master proceeded to state an account, resulting in a credit balance due defendant for money advanced on preliminary estimates and for some other incidental expenses and charges, not questioned by plaintiff, over and above the contract price for all the lumber received from the plaintiff, of $7,263.79. This result was reached by the master after a long hearing of the proof bearing on the several issues already disposed of by us, most of which were essential to the statement of the account between the parties. The conclusions so reached by him were afterwards approved by the district judge on exceptions taken, and are presumptively correct. The rule is well settled, and of frequent application in this court, that the findings of a master, concurred in by the court on exceptions taken, are presumptively correct, and will not be disturbed by an appellate court unless

some obvious error of law or serious mistake in considering the evidence has occurred. After a careful review of the legal questions involved, as already made, we have found no error in their determination, and, after giving as patient and thorough consideration to the proof as we are able to give, we have been unable to discover any serious mistake in the consideration of it by the master or court. A case like this, involving the taking of a long account and the consideration of great detail of facts necessary to do so correctly, is peculiarly appropriate for reference to a master, and in view of the manifestly careful and exhaustive work done by the master in this case, and its approval thereof by the court, we are constrained to apply the general rule just stated, and sustain the accounting as made.

[5] Assuming, but not deciding, that the transaction between the plaintiff and defendant amounted to "doing business" in the state of Missouri and subjected defendant, a foreign corporation, to the necessity of securing a license therefor, and that its failure to do so rendered the contract of March 14, 1910, void (Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404, 90 S. W. 1020, 4 L. R. A. (N. S.) 688, 111 Am. St. Rep. 511, 4 Ann. Cas. 808), do these facts prevent recovery by defendant of the sum of money found due it by the court below? We think not. Defendant, as disclosed in the pleadings and indisputable facts found by the master and court below, advanced a large sum of money to plaintiff in partial payment for lumber purchased from plaintiff pursuant to the terms of the void contract. Plaintiff, with this money in its possession, repudiated the contract, refusing to deliver the lumber to defendant, and converted the money to its own use. Every principle of justice and fair dealing requires that it should pay back this money to defendant; and this the law demands, notwithstanding the fact that the contract was void. One cannot make a shield of a void contract to rob an associate. Defendant's right of action, as asserted in its cross-bill, does not spring from or rest upon the void contract. It does not invoke the contract for the assertion of its rights. It seeks recovery notwithstanding the contract. Its action is properly classified as one in assumpsit for money had and received by plaintiff to defendant's use. Plaintiff's counsel argue that defendant's cross-bill is based on the contract, because, as they say, defendant does not concede that the contract was void, and for that reason that it does not state a cause of action. We think this is a mistake. The cross-bill states the facts of the case, among other things, that defendant was a foreign corporation, and had not secured a license to do business in Missouri. (These facts, according to plaintiff's contention, render the contract void, and constitute a sufficient averment of that fact for the purposes of this case.) Our conclusion is that the defendant may recover the money advanced to plaintiff in execution of the contract, even if it was void. This conclusion is supported by abundant authority. See United Shoe Machinery Co. v. Ramlose, 231 Mo. 508, 132 S. W. 1133, and cases therein cited.

[6] For another reason also defendant may recover notwithstanding its failure to secure a license to do business in Missouri. Plaintiff instituted this suit in equity. At the outset it secured an order

restraining defendant from prosecuting its replevin suit, and a further order appointing a receiver to take possession of and sell the property replevied. Thereby the entire controversy became merged in the equitable suit. Plaintiff first appealed to the court of equity to take cognizance of and grant the relief to which it might be entitled in view of all the facts of the case. The court responded to the appeal by enjoining an effort defendant had made at law to that end, and took full possession of the corpus of the controversy upon which defendant claimed a lien for money advanced, and sold the same. By this proceeding plaintiff voluntarily subjected itself to the jurisdiction of the court and to such orders and decrees as it might make in the case. The court, if it had known the true facts of the case as ultimately disclosed, doubtless would not have entertained plaintiff's bill and made the orders it entered in the case without at least an offer of plaintiff to pay to defendant any sums of money ultimately found due to it. The rule is universal that he who seeks equity must do equity. Much more, in our opinion, is it true that an applicant for equitable relief must submit himself to the requirement to do equity.

In view of these last-mentioned conclusions, it is quite unimportant to decide the first-mentioned question, whether the transaction between plaintiff and defendant was one in interstate commerce or not.

The decree of the District Court is affirmed.