## DUNN v. UTAH SERUM CO. et al.

No. 4169.  Decided May 6, 1925.  Rehearing denied July 10, 1925.
(238 P. 245.)

1. MORTGAGES—EVIDENCE HELD TO CONCLUSIVELY ESTABLISH THAT SUM STATED IN NOTE IN WRITING WAS A MISTAKE. Admission of both maker and payee of note, secured by mortgage, that sum designated in writing was a mistake, and that figures in left-hand corner were correct, together with fact that mortgage given to secure note is in latter sum, bearing same date and maturing at same time, *held* sufficient to establish that sum stated in writing was a mistake.

2. PLEADING—ALLEGATIONS HELD TO SUFFICIENTLY AVER EXECUTION OF MORTGAGE TO SECURE PAYMENT OF NOTE AS AGAINST GENERAL OBJECTIONS. Allegations that defendant executed a mortgage or mortgage deed on property described in complaint to secure payment of notes set out, mortgaged premises being described in complaint on file in case, *held* a sufficient averment of such fact as against general objections that description of mort-gaged premises was not contained in pleading or copy of mort-gage not set out.

3. CORPORATIONS—NOTE AND MORTGAGE, MADE AND ENTERED INTO BY NONCOMPLYING FOREIGN CORPORATION, HELD VOID. Note and mort-

gage, made and entered into by foreign corporation at time when it was engaged in doing business within state without having complied with Comp. Laws 1917, § 945, as amended by Laws 1919, c. 17, and section 947, *held* void, and corporation was without right to set them up in courts of this state.[1]

4. ESTOPPEL—SUBSEQUENT MORTGAGEES HELD NOT ESTOPPED FROM SETTING UP INVALIDITY OF PRIOR MORTGAGE HELD BY NONCOMPLYING FOREIGN CORPORATION. Subsequent mortgagees *held* not estopped because of recitals in their mortgages or because they received benefits of money lent and failed to repay it, from pleading and proving facts showing that foreign corporation's note and mortgage are void because made and entered into while corporation was doing business within state without having complied with Comp. Laws 1917, § 945, as amended by Laws 1919, c. 17, and section 947.

5. CORPORATIONS—STATUTE RENDERING CONTRACTS OF NONCOMPLYING FOREIGN CORPORATION VOID COVERS BOTH EXPRESS AND IMPLIED CONTRACTS. Comp. Laws 1917, § 945, as amended by Laws 1919, c. 17, and section 947, rendering contracts of foreign corporations doing business in state without complying with enabling statute void, includes all transactions whatsoever, implied contracts as well as expressed, and excludes idea that corporation may pick out particular contract made within state and claim any rights under it and sue on it.

6. CORPORATIONS—NONCOMPLYING FOREIGN CORPORATION NOT ENTITLED TO SET OFF VOID LOAN AGAINST RENT OWING BY IT. The note and mortgage of a foreign corporation, executed while doing business within state without having complied with Comp. Laws 1917, § 945, as amended by Laws 1919, c. 17, and section 947, as well as loan thereunder, being void, corporation could not set off such loan against rent owing by it.

On Application for Rehearing.

---

[1] *First National Bank* v. *Parker et al.*, 57 Utah, 290, 194 P. 661, 12 A. L. R. 1373, followed. *General Motors Acceptance Corp.* v. *Lund*, 60 Utah, 247, 208 P. 502, and *Anglo-California Trust Co.* v. *Hall*, 61 Utah, 223, 211 P. 991, distinguished.

Headnote 1.   27 Cyc. p. 1132 (Anno.).
Headnote 2.   31 Cyc. p. 65.
Headnote 3.   14a C. J. p. 1294.
Headnote 4.   21 C. J. p. 1096, 27 Cyc. p. 1226.
Headnote 5.   14a C. J. p. 1294.
Headnote 6.   14a C. J. p. 1313 (Anno.).
Headnote 7.   36 C. J. p. 442.

7.  LANDLORD AND TENANT—EVIDENCE HELD TO WARRANT INFERENCE
    OF REASSIGNMENT TO ASSIGNOR OF RIGHT TO CLAIM FOR RENT.
    Evidence that corporation assigned rent to bank to secure pay-
    ment of debt, that no rent was ever paid bank nor did latter
    demand payment thereof, that, debt being paid, bank returned
    and surrendered written assignment to president of assignor,
    *held* to warrant inference that bank intended to relinquish
    rights it had to rent, reinvesting corporation with right to
    claim for rent.

Appeal from District Court, Second District, Weber
County; *George S. Barker*, Judge.

Action by H. W. Dunn against the Utah Serum Company,
the Ft. Dodge Serum Company, and others. From the judg-
ment, the second named defendant appeals.

AFFIRMED.

*De Vine, Howell, Stine & Gwilliam* and *A. W. Agee*, all
of Ogden, for appellant.

*A. G. Horn*, of Ogden, for respondent.
WOOLLEY, District Judge.

In this action plaintiff sued to recover judgment upon a
promissory note and decree of foreclosure upon a mortgage
given to secure payment thereof, covering certain real estate
situate in Weber county, Utah, executed by the Utah Serum
Company.

There were four mortgages upon the same property, all
executed by the same mortgagor, held by different parties
to the action, given to secure payment of promissory notes
in amounts and ranking in priority as follows: (1) A first
mortgage to Joanna M. Ryan for $10,000; (2) a second
mortgage to the Ft. Dodge Serum Company for $3,000; (3) a
third mortgage to H. W. Dunn for $8,348.94; and (4) a
fourth mortgage to T. D. Ryan for $4,263.60.

Plaintiff brought suit upon the third note and mortgage,
naming as defendants the Utah Serum Company, mortgagor,
the other three mortgagees above mentioned, and Conception

Saval and Guy Saval. The two Savals made default, are not concerned in this appeal, and will not be mentioned further in this opinion.

Joanna M. Ryan, Ft. Dodge Serum Company, and T. D. Ryan, by appropriate pleadings, set up the making of their respective notes and mortgages by the Utah Serum Company, and prayed for judgments and decrees thereon. The Utah Serum Company, by cross-complaint against the Ft. Dodge Serum Company, sought a judgment against that defendant for $1,185.89, the balance alleged to be due upon a lease covering the mortgaged premises and dated May 23, 1923.

H. W. Dunn, the Utah Serum Company, and T. D. Ryan, making common cause against the Ft. Dodge Serum Company, in separate pleadings· alleged, in substance, that the Ft. Dodge Serum Company is a foreign corporation organized under the laws of the state of Iowa; that from about June, 1922, until April 16, 1923, said corporation carried on business in this state without having any certificate or license so to do; that at the time said defendant's note and mortgage were executed, namely, on August 31, 1922, the said corporation had not qualified to do business in the state of Utah, having failed to do any of the acts or things that are necessary to be done by foreign corporations in order that they may be entitled to engage in business within this state; that the note and mortgage were made, executed, and delivered by the Utah corporation to the Iowa corporation within this state; that they are payable in this state, and the mortgage covers land in this state; that therefore the note and mortgage are void, and the mortgage constitutes no lien upon the property.

There was a discrepancy in plaintiff's note between the amount thereof as shown in figures and the amount shown in writing; the instrument reading in part as follows:

"$8,348.94.                    Ogden, Utah, Sept. 1, 1922.

"On December 28th, 1922, days after date, for value received, the undersigned promises to pay to the order of H. W. Dunn at the National Bank of Commerce of Ogden, Utah, at its banking house

in Ogden, Utah, eighty thousand three hundred forty-eight and 94/100 dollars in U. S. gold coin, with interest," etc.

As to this discrepancy, plaintiff alleged, in substance, that through and by the mutual mistake of the parties to the note and of the person who wrote the same the word "eighty" was written instead of the word "eight," and that $8,348.94 was the correct amount for which the note should have been written. The Ft. Dodge Serum Company denied this allegation, but all of the other parties to the action admitted it.

In answer to the allegations concerning the invalidity of its note and mortgage (as well as two certain leases which it had taken upon the property of the Utah corporation), the Ft. Dodge Serum Company alleged, in substance: That during July, 1922, the Utah Serum Company, at Ft. Dodge, Iowa, represented to the Iowa corporation that it owned a serum plant at Ogden, Utah, upon which were certain liens which were being pressed for payment; that if the Iowa corporation would lend to the Utah corporation the sum of $3,000 to be used to pay off said liens, the latter would secure the debt by a mortgage upon its plant in Ogden, Utah, which mortgage would be subject only to a mortgage to be held by Joanna M. Ryan in the sum of $10,000, and that it would further give to the Iowa corporation a lease upon and an option to purchase the plant at any time within 18 months thereafter; that thereupon the said defendant, on August 2, 1922, deposited with the National Bank of Commerce of Ogden, Utah, the sum of $3,000, with instructions to the bank to pay the same to the Utah corporation upon its securing the same by note and mortgage, which would be a lien upon the property second only to the mortgage of Joanna M. Ryan aforesaid; that about 30 days thereafter the Utah Serum Company, by its board of directors, passed a resolution directing its officers to execute mortgages upon its property to the persons, in the amounts, and in the order of priority hereinbefore set out; that all of the said persons agreed that the mortgages should rank and take precedence as aforesaid, and ratified the arrangement between the two

corporations; that this defendant advanced said money and took said note and mortgage in accordance with such arrangement, and that the money so advanced by this defendant was used by the Utah corporation to pay said two liens in the sum of $1,500 each which were prior in right to the lien of any of the parties to this action; that in the month of August, 1922, this defendant entered into a lease with the Utah Serum Company whereby this defendant went into possession of the serum plant, being the property covered by all the mortgages; that said lease also gave the Iowa corporation an option to buy the said property; that ever since the making of the said lease all of the parties to this action have had actual knowledge of the rights of this defendant in and to the property; that said lease and option was superseded by a new lease and option dated January 1, 1923, and that the last-mentioned contract was superseded by a new lease and option dated May 22, 1923, of the terms and conditions of which all of the parties hereto had actual knowledge; that under the terms of its lease this defendant was entitled to possession of the property and had the right and option to purchase the same up to April 1, 1924; that under its lease the said defendant was obliged to pay to the Utah Serum Company rent at the rate of $175 per month; that it was applying the rent on its note and mortgage, and would continue to do so during the term unless otherwise ordered by the court; that at no time prior to the agreement made by it with the Utah corporation to lend said $3,000 and the time it paid said money to the bank at Ogden, Utah, did this defendant transact any business within the state of Utah; that the only transaction it ever had up to that time in this state was to pay the money to the bank for the use and benefit of the Utah corporation and to comply with its agreement theretofore made at Ft. Dodge, Iowa; that it had nothing whatever to do with the drawing of the note and mortgage, nor with recording the mortgage, and the first knowledge that it had with reference thereto was when it received the note from the Utah corporation and the mortgage from the county recorder of Weber county, Utah, after it had been

recorded by the Utah corporation; that none of the parties to this action has ever offered to return to this defendant the money so advanced by it, although they were all parties to the agreement by which it advanced the same, and they have all profited by the advancement of such money and the use thereof to pay the prior liens upon the mortgaged property; that all of the mortgages aforesaid were authorized by the Utah Serum Company at the same meeting of its board of directors, and that ever since such transaction the parties to this action have repeatedly, up to the filing of this action, ratified, approved, and adopted the act of this defendant in making said advancement and have accepted the benefits thereof.

As to the claim of the Utah Serum Company for rent due on the lease dated May 23, 1923, in addition to what is alleged concerning that matter as above stated, the Ft. Dodge Serum Company alleged that the Utah Serum Company had no interest in such rent, having theretofore assigned the same to the bank.

The allegations of the Ft. Dodge Serum Company, which are summarized above, touching the loan of $3,000 made by said defendant to the Utah Serum Company, and the transaction involving that matter, are denied by the other parties to the action.

The following salient facts are disclosed by the record and are not in dispute: That the Ft. Dodge Serum Company is a corporation organized and existing under and by virtue of the laws of the state of Iowa; that the said corporation qualified to do business within this state on April 16, 1923, by taking the necessary steps to that end as provided by our laws, but that prior to that date it was not qualified to do business within this state, not having taken any of the steps necessary to so qualify it; that the Utah Serum Company is a corporation of this state, and at the time involved in this lawsuit was the owner of the real property described in the mortgages mentioned in the pleadings and situate in Weber county, Utah, upon which was located a plant for the production of hog serum; that in August,

1922, at Ogden, Weber county, Utah, the Utah Serum Company borrowed from the Ft. Dodge Serum Company the sum of $3,000, to be used to pay a mechanic's lien and a mortgage then outstanding against the property; that the president and general manager of the Iowa corporation placed this money in a bank in Ogden, Utah, to be turned over to the Utah corporation by the cashier of the bank upon the execution and delivery to him by the latter corporation of a note in that amount and a second mortgage upon the property; that on August 31, 1922, at Ogden, Utah, the Utah Serum Company made its promissory note for that amount to evidence said debt, which note was payable to the order of the Ft. Dodge Serum Company at Ogden, Utah, on February 1, 1923, and that at the same time and place, and to secure the payment of the note, it signed and placed of record in the county recorder's office of Weber County, Utah, a mortgage upon the property, which mortgage, pursuant to the agreement between the parties, was made subject to the first mortgage upon the same property held by Joanna M. Ryan in the sum of $10,000; that the Utah Serum Company also at the same time made the other notes and mortgages above mentioned, except the Joanna M. Ryan note which had been previously given; that all of the parties to the action understood that the four mortgages were to be placed upon the property in the order in which they are herein set forth and no question is raised as to the priorities among them; that on or about August 1, 1922, the Utah Serum Company leased to the Ft. Dodge Serum Company the premises involved, together with the serum plant.

This lease was signed by the officers of the Ft. Dodge Serum Company at Ft. Dodge, Iowa, and was brought to Ogden, Utah, where it was signed by the Utah Serum Company. Thereupon the Ft. Dodge Serum Company took possession of the premises, made some repairs thereon, and commenced to carry on the business of producing serums. This company conducted the business under the lease above mentioned from some time between August 1 and August 15, 1922, until February 3, 1923, when a new lease was entered

into between the parties under which operations were continued until May 23, 1923.

The further undisputed facts also appear: That on May 23, 1923, the Ft. Dodge Serum Company in the meantime having qualified to engage in business in this state, a new lease was entered into between the two corporations; that under this lease the Iowa corporation was given the right to the possession of the premises and property until January 1, 1924, and it agreed to pay to the Utah corporation as rent the sum of $175 per month; that the Ft. Dodge Serum Company occupied and used the premises during the term of this lease, paid part of the rent, but refused to pay the balance, claiming the right to offset the same against the $3,000 debt, so that at the time of the trial there was due thereon the sum of $1,214.84, unless the offset should be allowed.

The trial court found all of the issues against the Ft. Dodge Serum Company and in favor of the other parties to the action; found, as conclusions of law that the note and mortgage given by the Utah Serum Company to the Ft. Dodge Serum Company before the latter qualified to do business within this state were null and void and created no lien upon the property, and that said corporation is not entitled to maintain any action thereon or to recover any judgment herein on said note and mortgage against the plaintiff or against any of the defendants, and that no claim thereon can be set up as a defense to the counterclaim of the Utah Serum Company for rent. The court entered judgments for the amount found to be due to Joanna M. Ryan from the Utah Serum Company on her note and mortgage, and established this as a first lien upon the property, for the amount found to be due to H. W. Dunn, the plaintiff, on his note and mortgage, and established this as a second lien upon the property, for the amount found to be due to T. D. Ryan on his note and mortgage, and established this as a third lien: decreed that the property be sold at sheriff's sale to satisfy the judgments in the order above stated; declared that the note and mortgage held by the Ft. Dodge Serum Company,

and all the leases and contracts held by that company and executed by the Utah Serum Company prior to the lease of May 23, 1923, were null and void and constituted no lien upon the property; denied the Ft. Dodge Serum Company any relief whatever; and awarded to the Utah Serum Company a judgment against the Ft. Dodge Serum Company for the sum of $1,214.84, the amount of rent found to be due under the last lease.

From this judgment the Ft. Dodge Serum Company appeals, and seeks a reversal upon the following grounds: (1) That the evidence is insufficient to·support the findings as to the mistake in plaintiff's note; (2) that the cross-complaints of Joanna M. Ryan and T. D. Ryan do not state facts sufficient to constitute causes of action; and (3) that the judgment and decree is wrong as matter of law in declaring that the note and mortgage of the Ft. Dodge Serum Company are void, in denying appellant any relief, and in awarding judgment against it in favor of the Utah Serum Company upon the latter's cross-complaint for rent.

There is no merit in the first proposition. The note and mortgage are in evidence. In the body of the note the sum to be paid is written "Eighty thousand three hundred and forty-eight and 94/100 dollars." In the upper left-hand corner appear the figures "$8,348.94," and the word "gold." The mortgage recites that it is given to secure payment of a note in the sum of $8,348.94, bearing the same date and maturing at the same time as plaintiff's note. The holder of this note, who is also the payee named therein, alleges that the writing is a mistake, that the note should read "eight" instead of ·"eighty," and that $8,348.94 is the amount for which the note was intended by the parties thereto to be written. The maker of the note admits the allegation, as do all of the parties to the action except appellant. Hence no evidence was necessary to establish the fact of the mistake as between the maker and the payee, who are the only parties interested in that question. Furthermore, appellant, in its pleadings, admits the making of this note and mortgage, and also alleges that the Utah Serum Company, at one and the

same meeting of its board of directors, authorized its officers to execute all of the mortgages involved in this suit, including a mortgage to Dunn for $8,348.94. The evidence shows that this was the only note executed to Dunn at the time of the transaction involved; that this was the note secured by the mortgage to him; that the Utah Serum Company owed Dunn $8,348.94, and not $80,348.94; that all of these mortgages were executed at about the same time. And the evidence does not show that any other note was given to Dunn by that company at that time. All of these facts and circumstances which were shown, when considered in connection with the pleadings, are not only sufficient to support the finding of the court that the writing of the note for $80,348.94 was a mistake, but, in the writer's judgment, establish the fact beyond all question.

The second ground urged for a reversal cannot be sustained because the cross-complaints of Joanna M. Ryan and T. D. Ryan do contain averments of sufficient facts to withstand the objections which were made against them.

In her cross-complaint Joanna M. Ryan alleges that on February 28, 1922, the Utah Serum Company, made, executed, and delivered to her a note for the sum of $10,000, and sets out a copy of the note; that she is the holder thereof; that the same is due, and that no part thereof has been paid; that plaintiff Dunn and the other defendants have claims upon the mortgaged property which are subject to her mortgage; that on August 30, 1922, in order to secure payment of said note according to the terms thereof, the Utah Serum Company "made, executed, and delivered to this answering defendant its mortgage deed upon the premises described in plaintiff's complaint," which mortgage was duly acknowledged and recorded, the date and place of record being stated. In his cross-complaint, T. D. Ryan makes substantially the same allegations as to his note and mortgage, referring in the same manner as does his codefendant to the complaint, and also alleges that the Ft. Dodge Serum Company is a foreign corporation, and that it had not complied with the laws of this state relating to foreign corporations

prior to April 16, 1923. To these pleadings the Ft. Dodge Serum Company demurred, alleging as to each that it does not state facts sufficient to constitute a cause of action. The demurrers were overruled. It then objected at the trial to the introduction in evidence of the note and mortgage of Joanna M. Ryan, and, at the close of their cases. in chief, moved for nonsuits as to the Ryans upon the ground stated in the demurrers. The objection was overruled, and the motions were denied. The foregoing rulings, together with the conclusions of law in favor of the Ryans, are the errors assigned in this connection.

Two objections are made to the cross-complaints: (1) That they do not contain a description of the mortgaged premises; and (2) that copies of the mortgages are not set out therein or attached as exhibits. In this regard the pleadings are faulty, but they are not fatally defective. The mortgaged premises are described in the complaint. It is true that the complaint at the time of the trial had been superseded by a second amended complaint, but it was still on file in the case. The allegation in the cross-complaint, to the effect that the Utah Serum Company executed a mortgage, or a mortgage deed, to the answering defendant, upon the property described in the complaint, to secure payment of the note set out, would seem to be a sufficient averment of that fact as against the mere general objections which were made. If there had existed any good or sufficient reason why appellant should have desired these pleadings to contain a specific description of the mortgaged property, or copies of the mortgages, and if the same had been suggested to the trial court upon a special demurrer or a motion to make definite and certain, that court no doubt would have ordered an amendment to include those matters. I am of opinion that none of these assignments is well taken.

The important questions raised by this appeal are presented under the third proposition above mentioned. A discussion of them must proceed from the provisions of our statutes relating to foreign corporations.

Comp. Laws Utah 1917, § 945, as amended by chapter 17, Laws Utah 1919, reads as follows:

"All corporations, excepting insurance corporations, not organized under the laws of this state, before doing any business within the state, shall file with the county clerk of the county in which their principal office in the state may be situated, a copy of their articles, by-laws and amendments certified by the secretary of state of the state wherein the same are incorporated, together with an acceptance of the provisions of the Constitution of the state, and designation of some person residing in said county upon whom all legal process may be served; and within ten days thereafter shall also file with the secretary of state copies of all the foregoing duly certified by such county clerk."

Comp. Laws Utah 1917, § 947, reads:

"Any such corporation failing to comply with the provisions of the Sec. 945 shall not be entitled to the benefits of the laws of this state relating to corporations, and shall not sue, prosecute, or maintain any action, suit, counter-claim, cross-complaint, or proceeding in any of the courts of this state, on any claim, interest, or demand arising, or growing out of, or founded on any contract, agreement, or transaction made or entered into in this state by such corporation or by its assignor, or by any person from, through, or under whom it derives its interest or title or any part thereof; and shall not take, acquire, or hold title, possession, or ownership of property, real, personal, or mixed, within this state; and every contract, agreement, and transaction whatsoever made or entered into by or on behalf of any such corporation within this state, or to be executed or performed within this state, shall be wholly void on behalf of such corporation and its assignees and every person deriving any interest or title therefrom, but shall be valid and enforcible against such corporation, assignee, and person; and any person acting as agent of a foreign corporation which shall neglect or refuse to comply with the foregoing provisions shall be deemed guilty of a misdemeanor, and shall be personally liable on any and all contracts made in this state by him for or on behalf of such corporation during the time that it shall be so in default; provided, that this section shall not be held to apply to persons acting as agents for foreign corporations for a special or temporary purpose or for a purpose not within the ordinary business of such corporations, nor shall it apply to attorneys at law as such."

In *First National Bank* v. *Parker et al.*, 57 Utah, 290, 194 P. 661, 12 A. L. R. 1373, Mr. Justice Gideon, speaking for the court concerning these statutes, says:

"In our judgment the language of our statute with references
to noncomplying foreign corporations is susceptible of but one con-
struction. Its meaning is not doubtful. Courts uniformly hold
that in the application of such statutes there is but one thing to do,
namely, enforce the statute as it is."

That statement is no doubt correct both as to the statutes
being susceptible of but one construction and as to the duty
of courts in regard to their application; but it is sometimes
difficult to determine whether or not the law applies to the
facts in a given case. That is the main question presented on
this appeal; appellant contending that its note and mortgage
do not come within the ban of section 947.

The Ft. Dodge Serum Company is a corporation organ-
ized and existing under and by virtue of the laws of the state
of Iowa. It is therefore a foreign corporation so far as
Utah is concerned. Not being an insurance corporation, it
was required by section 945, as amended, before doing any
business within this state, to file with the county clerk of the
county in which its principal office in the state may be situ-
ated certified copies of its articles of incorporation, its by-
laws and amendments thereto, and to proceed as otherwise
directed in said section. This it failed and neglected to do
until April 16, ·1923, or some 8 months after the date of the
transactions which are involved in this action. The trial
court found as a fact, nevertheless, that it ''commenced do-
ing business at Ogden, in the county of Weber, and state
of Utah, and had herein its principal place of business dur-
ing the month of August, 1922, and has ever since that time
maintained an office and continued to do business at Ogden
City, Weber county, state of Utah, and to operate the serum
plant described in the cross-complaint of the Ft. Dodge
Serum Company.'' This finding is not assailed in any way.
It could not very well be assailed, for the president and gen-
eral manager of the company testified that the first leasing
contract was executed by the Utah Serum Company on
August 2, 1922, and that immediately after its execution ap-
pellant took possession of the plant and began to operate it,
while the superintendent testified that he was in the employ

of the Iowa company, and that it began operating the plant on August 2, 1922, and had ever since that time continued such operation.

The appellant's note and mortgage, which are contracts, were made and entered into and by their terms are to be performed within this state; and they were made at a time when appellant was engaged in doing business within the state without having complied with the enabling statute.

The facts above mentioned bring the case squarely within the operation of the provisions of section 947, supra, as interpreted and applied by this court in *First National Bank* v. *Parker*, supra, and lead us to the inevitable conclusion that appellant's note and mortgage are void, and that appellant has no right to set them up in the courts of this state as the basis of a counterclaim or cross-complaint.

The fact that this foreign corporation was doing business within the state, in violation of section 945, supra, at the time when the contracts were made, distinguishes the case from *General Motors Acceptance Corp.* v. *Lund*, 60 Utah, 247, 208 P. 502, and *Anglo-California Trust Co.* v. *Hall*, 61 Utah, 223, 211 P. 991, in which cases the court held that section 947 did not invalidate the contracts therein mentioned. The holdings in those cases are based upon the ground that the foreign corporations were not engaged in "doing business" within this state, hence they were not "failing to comply with section 945," and therefore the contracts do not come within the class of contracts which are denounced by section 947. The rule to be **3** deduced from the cases cited may be stated thus:

Where it is made to appear that any foreign corporation, except an insurance corporation, is doing business within this state within the meaning of section 945, without having complied therewith, every contract whatsoever made or entered into by or on behalf of such corporation within this state, or which is to be executed or performed within this state, is wholly void on behalf of such corporation. This, as I understand it, is the construction of the law which the

court had in mind when speaking upon the subject in the Parker Case.

The doctrine of estoppel cannot be invoked to lift this appellant out of the difficulty in which it finds itself. To hold that Dunn and T. D. Ryan are estopped, because their mortgages recite that they are given subject to this second mortgage, or that Dunn, the two Ryans, and the Utah Serum Company are estopped because they have received the benefits of the money lent and have failed to repay or to return the same, to plead and prove in this action, to which they are parties and wherein their rights are involved, **4** the facts which show that appellant's contracts are void and that it has no right to set them up as the basis of a counterclaim or a cross-complaint would be, in practical effect, to defeat the purpose and intention of the Legislature as manifested in the statute. Such a result cannot be sanctioned by the courts. It must be stated, however, that there are some authorities which apparently support an opposite conclusion with respect to estoppel in cases of this kind. Counsel cites in his brief the following: 1 Wiltsie on Mortgage Foreclosures, 471; 1 Jones on Mortgages, par. 744; 27 Cyc. 1226; *Pratt* v. *Nixon*, 91 Ala. 192, 8 So. 751; *Jerome* v. *McCarter*, 94 U. S. 734, 24 L. Ed. 136; *Hasenritter* v. *Kirchhoffer*, 79 Mo. 239; *Ins. Co.* v. *Cushman*, 130 Iowa, 378, 106 N. W. 934; *Ray* v. *Inv. Co.*, 98 Ga. 122, 26 S. E. 56; *Hallam* v. *Ashford* (Ky.) 70 S. W. 197; *Lasswell Lumber Co.* v. *Lee Wilson*, 236 F. 322, 149 C. C. A. 454; *Iowa Mining Co.* v. *Guaranty Co.* (C. C.) 146 F. 437; *Blodgett* v. *Zinc Co.*, 120 F. 893, 58 C. C. A. 79; *Farmers' Trust Co.* v. *R. R. Co.* (C. C.) 68 F. 412; *American Loan & Trust Co.* v. *R. R. Co.* (C. C.) 37 F. 242; *Dickey* v. *Ins. Co.*, 119 Ark. 12, 173 S. W. 398, Ann. Cas. 1917B, 634; *Ray* v. *Agency Co.*, 98 Ga. 122, 26 S. E. 56; *Pancoast* v. *Ins. Co.*, 79 Ind. 172; *Ins. Co.* v. *Cushman*, 130 Iowa, 378, 106 N. W. 934; *Spinney* v. *Miller*, 114 Iowa, 210, 86 N. W. 317, 89 Am. St. Rep. 351; *Mahar* v. *Sites Co.*, 71 Misc. Rep. 430, 128 N. Y. S. 620; *Mill Co.* v. *Bartlett*, 3 N. D. 138, 54 N. W. 544; *Petroleum Co.* v. *Weare*, 27 Ohio St. 343; *Kilgore* v. *Smith*, 122 Pa. 48, 15 A. 698;

*Wright* v. *Lee,* 2 S. D. 596, 51 N. W. 706; *La France Engine Co.* v. *Mt. Vernon,* 9 Wash. 142, 37 P. 287, 38 P. 80, 43 Am. St. Rep. 827; *Johnson* v. *Mason Lodge,* 106 Ky. 838, 51 S. W. 620; and Thompson on Corporations, § 6710. While a few of the cases cited apparently tend to bear out appellant's contention, most of them upon an examination are seen to be clearly distinguishable for various reasons from the case at bar.

In support of the conclusion which the court here takes on the matter, see 12 R. C. L., p. 82, where many authorities upon the subject are collated in the footnotes and the distinctions are pointed out in the text. It is there stated:

"There is also authority to the effect that a person who enters into a contract with a foreign corporation which has not complied with the domestic statute is estopped to deny the validity of the contract on the ground of such noncompliance, at least where the statute does not provide that such contract shall be void, but merely fixes a special penalty for violation of the statute, but so apparent is the fact that the adoption of the doctrine of estoppel would virtually nullify the purpose of statutes of this nature, that the authorities generally refuse to assent to it, although the failure to apply this rule may, in some cases, work a hardship on the delinquent corporation."

Neither can this offending corporation prevail on the ground that the act of lending money was not doing business, and hence that contract was not a void transaction; nor upon the ground that the contract by which the money was lent was fully performed before appellant began doing business in this state; nor yet upon any implied contract or equitable ground. The statute strikes down every contract and transaction whatsoever made or had within the state by such corporation. The language of section 947 includes all transactions whatsoever, the first contract as well as the last, implied contracts as well as those which are expressed, and excludes the idea that such a corporation may pick out any particular contract made within the state and claim any rights under or sue upon it. But, aside from what has already been said about the validity of the loan, the facts do not support appellant's argument upon that point, for it is established that the contract by which the money was lent

was not completed until after appellant commenced doing business at Ogden, Utah. The money was placed in the bank on August 2d, and was not transferred to the Utah Serum Company until the last day of that month, at which time the appellant had been in operation for about three weeks. So that upon either ground appellant must fail with respect to this matter.

There are two cases based upon the statutes of Missouri which support the appellant's argument that he is entitled to recover this money upon equitable grounds, namely, *United Shoe Machinery Co.* v. *Ramlose*, 231 Mo. 508, 132 S. W. 1133, and *Lasswell Land & Lumber Co.* v. *Lee Wilson & Co.*, 236 F. 322, 149 C. C. A. 454, and there are two against him, namely, *Thomas* v. *Birmingham Ry., L. & P. Co.* (D. C.) 195 F. 340, and *Phillips Co.* v. *Everett* (C. C. A.) 262 F. 341. Referring only to those cited by appellant, the Lasswell L. & L. Co. Case in the federal court cites and relies upon the Ramlose Case in the state court. In the latter case the court again repeated by quoting with approval from *Bank* v. *Lyons, Receiver*, 220 Mo. 538, loc. cit. 570, 119 S. W. 540, 549, the following:

"We have cited and quoted somewhat extensively from a few of the many cases found in this country and in England bearing upon the question of the right of a party to sue for and recover money paid or loaned to another upon a void contract; and the rule announced by all of them seems to be that where a void contract has been entered into, and that by means thereof money or other valuable thing has been parted with by one party thereto, and received and accepted by the other party thereto, and where the latter repudiates the contract and refuses to return the money or such other valuable thing, then the law will imply an agreement on the part of the recipient to return the same to the other party; and if he fails to do so, then the injured may maintain an appropriate action against the offending party for the recovery of the money, or for the value of the thing so retained. That implied promise or agreement springs from the general moral obligation resting upon all persons and corporations to do equity and justice in all such transactions. To hold otherwise would be sanctioning the rankest injustice, and thereby take the money or property from one party and give it to another without compensation, and against the intention of both parties, as manifested by the void contract. *Of course*

*this rule should not and does not apply where its enforcement would
violate some statute or other principle of law which prohibits the
doing of the very thing the enforcement of the rule would accom-
plish.* The courts have improvised this rule by which right and
justice may be worked out to the parties thereto, and not for the
purpose of enabling them to avoid the law, and do indirectly that
which the law will not permit them to do directly." (Italics ours.)

We cannot apply this equitable principle in the instant
case because to do so would violate that provision of the
statute which declares that no offending foreign corporation
shall have the right to sue or maintain any proceeding in the
courts of this state on any claim, interest, or demand arising
or growing out of any transaction had within this state. The
language of section 947 is so broad and so rigid as to close
against this appellant every possible avenue of escape, re-
sulting in an injustice to it which the court is powerless to
avoid.

A word as to the counterclaim for rent is necessary in con-
clusion. This claim is based upon a contract which is bind-
ing on both sides, having been made after the Ft. Dodge
Serum Company became entitled to do business within
the state. No question is raised as to the amount due. 6
The only point made is that appellant claims the right
to set off the $3,000 against the rent. But this it cannot do.
All transactions had within this state by this appellant relat-
ing to that loan are void, and they are void for all purposes.
The courts may not recognize them for any purpose. With
them out of the way, the judgment on the counterclaim is
clearly right.

The judgment must therefore be affirmed at appellant's
cost. It is so ordered.

GIDEON, C. J., and FRICK and CHERRY, JJ., concur.

Chief Justice WEBER'S term expired pending the deter-
mination of this cause.

THURMAN, J., did not participate herein.

On Application for Rehearing.

WOOLLEY, District Judge. The appellant has filed a petition for a rehearing, on the ground that we have overlooked and failed to decide one of the main points in the case. It is true that the point was overlooked by the writer of the opinion which has been filed, but it is not one of controlling importance. It may be disposed of without a rehearing.

The Utah Serum Company obtained a judgment against the Ft. Dodge Serum Company on its cross-complaint for the rent due on the lease of the plant dated May 23, 1923. It appeared from the evidence, however, that on July 26, 1923, the Utah Serum Company had executed and delivered to the National Bank of Commerce, of Ogden, Utah, an instrument in writing by which it sold, assigned, and transferred to the bank all of the rent due or to become due under the lease. A duplicate of this assignment was likewise delivered to the Ft. Dodge Serum Company. But it was an admitted fact that the Iowa corporation did not pay any rent to the bank; and the evidence showed without conflict that the bank had never made any demand for rent. It also appeared from the evidence, without conflict, that this assignment was given as collateral security for a debt owing by the Utah Serum Company, and that before the commencement of this action the debt had been paid and the assignment returned or surrendered by the bank to T. D. Ryan, president of the Utah Serum Company.

Counsel for appellant in the brief says:

"Upon what theory the trial court could grant a judgment for the rent after the same had been absolutely assigned is beyond our comprehension. It has always been our belief that. when an assignment, was made, the assignor no longer had a right to sue or recover upon the original claim, and that the action could only be brought in the name of the assignee. This doctrine for years has had the sanction of this court. *Wines* v. *Rio Grande*, 9 Utah, 228."

The foregoing is the extent of counsel's argument and comment contained in his brief upon the point which we overlooked. But he makes the further suggestion in the petition for a rehearing that, since the assignment is absolute in form

and no reassignment has ever been made by the bank to the Utah Serum Company, the bank may at any time sue and recover for the rent, with the result, if this judgment be permitted to stand, that the Ft. Dodge Serum Company might have to pay the debt twice.

The weakness of this position lies in the assumption that the right to the rent was vested in the bank and not in the Utah Serum Company, and hence as to this matter the latter is not the real party in interest. This assumption is untenable, in view of the evidence contained in this record and of the reasonable inference to be drawn therefrom. The Utah corporation assigned the rent to the bank to secure the payment of a debt. No rent was ever paid to the bank nor did the latter ever demand payment of the same. The debt being paid, the bank returned and surrendered the written assignment to the president of the assignor named therein. The reasonable inference to be drawn from these facts is that the bank intended thereby to reassign or to relinquish whatever right or interest it had to the rent. The effect of the transaction was to reinvest the Utah Serum Company with the right or title to the claim for the rent. No writing was necessary to this purpose.

The petition for rehearing, therefore, ought to be denied.

GIDEON, C. J., and FRICK and CHERRY, JJ., concur.