DICKEY v. SOUTHWESTERN SURETY INSURANCE COMPANY.

Opinion delivered January 25, 1915.

1.  SURETYSHIP—LIABILITY OF SURETY—RIGHT TO PROTECT HIMSELF— CONTRACT WITH PRINCIPAL.—Appellee was surety on the bond of a con-

tractor where it became apparent that the contractor could not complete the work on time, appellee advanced the contractor money to proceed with the work, taking an assignment of the estimates due the contractor, and a mortgage on certain property. *Held*, under the evidence the surety had the right to protect itself in this way and that there was no such fraud in the transaction as would warrant its being set aside.

2.   ASSIGNMENT—EQUITABLE ASSIGNMENT—PARTICULAR FUND.—A mere promise, though of the clearest and most solemn kind, to pay a debt out of a particular fund, is not an assignment of the fund, even in equity.

3.   ASSIGNMENT—EQUITABLE ASSIGNMENT—PARTICULAR FUNDS.—In order to constitute an equitable assignment, there must be such an actual or constructive appropriation of the subject-matter as to confer a complete and present right on the party meant to be provided for, even where the circumstances do not admit of its immediate exercise.

4.   CONFLICT OF LAWS—FOREIGN CORPORATIONS—FORFEITURE OF CHARTER.— The courts of this State have no right or authority to dissolve a foreign corporation and wind up its business, the rights of courts of equity in this State are limited to taking charge of the property within the jurisdiction of the court and enforcing the rights of creditors here.

Appeal from Crawford Chancery Court; *W. A. Falconer,* Chancellor; affirmed.

*L. H. Southmayd* and *New & Krauthoff,* for appellant; *Frederic O. Berge,* of counsel.

1.   The mortgage was void. It was made with fraudulent intent to cheat, hinder and delay creditors and the surety company was privy to such fraud. Kirby's Dig., § § 3374-5; Bigelow, Fraud. Conv. Rev. Ed. 291; 20 Cyc. 462; 151 Mo. 86; Bump. Fr. Conv. (3 ed.), 200; 101 U. S. 141; 14 Ark. 69-75; 55 *Id.* 579, 582; 23 *Id.* 735, 744; 50 *Id.* 314; 46 *Id.* 122, 127; 50 *Id.* 314-318; 99 *Id.* 45; 57 *Id.* 569; 31 *Id.* 666.

2.   The surety company became a party to the contract and obligated itself to furnish all labor, material, etc., and is now precluded from setting up any claim against Dickey.

3.   The agreement between the engineering company and the district was an equitable assignment of, or equit-

able lien on, moneys sufficient to pay Dickey, and the money can be followed into the hands of the surety company. 166 Ala. 231; 52 So. 388; 139 Am. St. 30; 114 Ala. 277; 30 Col. 287; 97 Am. St. 138; 132 Ga. 495; 131 Am. St. 210.

4. The amendment should have been allowed. The failure to comply with the laws of Oklahoma forfeited the company's charter. The statute is self-executing and requires no judicial action. A corporation which has forfeited its charter can not sue or be sued. A forfeiture of charter of a foreign corporation under the laws of its own State can be alleged and shown even on collateral attack. 86 N. C. 492; 8 Ind. 392; 16 *Id.* 181; 19 *Id.* 192; 8 B. Mon. (Ky.) 122; 5 Ia. 357; 8 Wend. 480; 89 Wis. 297-312; 19 Johns. (N. Y.) 456, 476; 48 Mo. 543; 52 *Id.* 583; 8 Cow. 391; 133 Mo. 545; 12 Ind. 285-7; 120 Pa. St. 391; 209 *Id.* 305; 164 Col. 382; 136 Pac. 62; 21 Col. 263; 52 Mo. App. 439; 107 N. Y. 159-170; 56 N. J. Eq. 526; 179 Fed. 257; 128 Pac. 1040; 68 Ark. 134-141; 109 U. S. 527; 10 Cyc. 1316; 5 Thomp. on Corp., §§ 6721-23.

*Read & McDonough* and *G. A. Paul,* for appellee.

1. The mortgage was not fraudulent nor void. 91 Ark. 218; 120 S. W. 844; 115 *Id.* 510; 117 *Id.* 956; 119 *Id.* 1169; 111 *Id.* 1169; 118 *Id.* 1159; 120 *Id.* 844. A transfer of property to indemnify a surety is valid in the absence of fraud. 6 Mart. 572; 6 Mass. 339; 46 Mich. 135; 32 S. W. 556; 122 Mass. 102. A pre-existing debt is a good consideration. 10 Ind. 240; 93 Mich. 499; 75 Tex. 139; 15 S. W. 101; 77 Ind. 383; 29 N. C. 471; 20 Ark. 332. Preferences of creditors in good faith are upheld in this State. 22 Ark. 184; 26 *Id.* 20; 14 Fed. 155; 54 N. W. 568; 44 *Id.* 645. To vitiate a conveyance made on a valuable consideration it must be shown that the grantee participated in the fraudulent intent. 31 Ark. 554; 55 Ala. 368; Fed. Cas. 8956; 30 Ark. 417; 50 Ark. 314. The liability to the surety was prior to any liability to Dickey. 96 Ark. 268.

2. The surety company was not liable for labor and material. There was no novation of the debt because there was no release of the original debtor. 56 Ark. 163.

There was no lien against a purchaser for value. 91 Ark. 218; Kirby's Dig., §§ 4966-7.

3. There was no equitable assignment of estimates to Dickey. 124 N. Y. S. 301; 130 N. Y. S. 284; 72 Misc. 486; 202 Fed. 791; 4 Cyc. 29; 81 U. S. 69.

4. The existence of a corporation can not be questioned nor attacked collaterally. 96 Ark. 396; 68 *Id.* 134; 95 *Id.* 396; 139 Pac. 248.

MCCULLOCH, C. J.   This case originated in the chancery court of Crawford County as an action instituted by appellant, W. S. Dickey, against the Oklahoma Engineering Company, a corporation domiciled in the State of Oklahoma, to subject assets of that corporation in this State to the payment of a debt owing by said corporation to appellant, and to cancel a mortgage and other securities executed by said Oklahoma Engineering Company to the Southwestern Surety Insurance Company, another foreign corporation.   On July 8, 1912, the Oklahoma Engineering Company entered into a contract with an improvement district in the city of Van Buren, Arkansas, for the construction of sewers in that city, and appellee, at the instance of said Oklahoma Engineering Company, entered into obligation with the improvement district to guarantee performance of the contract on the part of the Engineering Company.   The Engineering Company proceeded to perform said contract and purchased from appellant material to be used in the work of constructing the sewers.   A balance in the sum of $1,646.69 is still due appellant on the account for the price of said material furnished.   On November 27, 1912, the Engineering Company executed to appellee a mortgage on machinery and tools which it owned to secure advances of money which had already been made to it and to be thereafter made, and further to indemnify appellee company from loss on the aforesaid bond.   About the same time, the Engineering Company made an assignment in writing to appellee of the amounts due upon estimates from the improvement district.   Appellee was joined as defendant in the suit

and the prayer of the complaint was that said mortgage to appellee and the assignment of the amounts due upon estimates from the improvement district be cancelled and set aside as a fraud on the rights of appellant, and that the property be subjected to the payment of appellant's debt.    Appellee filed an answer and cross-complaint, in which all the allegations of fraud were denied and a foreclosure of the mortgage was prayed for.

After the proof was taken, and before the submission of the case, appellant offered to file an amended complaint setting up the fact that the Engineering Company had forfeited its charter on June 30, 1912, by failing to pay the corporation tax in the State of its domicile, and asked that the three directors be substituted as defendants and held to account as trustees for the creditors of the corporation pursuant to the statutes of Oklahoma.

The case was heard upon the pleadings and the testimony, and final decree was rendered dismissing appellant's complaint as against the appellee and awarding to appellee a foreclosure of the mortgage and directing payment over of the funds paid into court under the assignment of estimates due from the improvement district.

(1)    The evidence supports the finding that when appellee gave the bond to the improvement district to guarantee performance of the contract on the part of the Engineering Company, the latter undertook to indemnify appellee against loss.    The contract of the Engineering Company with the improvement district provided for completion of the work on a certain date, and before that date it became apparent that the Engineering Company would not be able to complete performance of its contract. In order to protect itself from loss, appellee agreed to make advances of money to enable the Engineering Company to complete performance of the contract, and the mortgage and the assignments of estimates were executed to secure the amounts so advanced.    The testimony is very voluminous and a strenuous effort has been made to show that improper motives prompted these transactions

between the Engineering Company and appellee, but we fail to find anything at all in the evidence which would warrant the conclusion that the transactions were in any wise tainted with fraudulent intention, or that the effect thereof was to cheat, hinder or delay the creditors of the Engineering Company. Appellee was already liable to the improvement district for the performance of the contract, and the agreement to make further advances was prompted alone by that obligation and to protect itself from loss. It certainly had a right to exact security from the Engineering Company, and there is no semblance of fraud in the transaction so far as we are able to discover from the evidence. Certainly, the form of the transaction did not operate as a wrongful interference with the assets of the corporation so as to amount to a hindrance or defeat of its creditors, and there is, as already stated, nothing in the evidence to show that there was any actual fraud intended. We fail to see any principle upon which the transactions could be declared to be fraudulent or that would warrant a court of equity in setting aside the security. The evidence is entirely too voluminous to justify an analysis and discussion in this opinion.

(2-3) It is contended that prior to the assignment, the amount due on one of the estimates was assigned or appropriated to the payment of appellant's debt and that it should not be included within the securities held by appellee. The facts upon which this claim is based are that some time prior to the time the mortgage and the assignment to appellee were executed, appellant, through his representative in Van Buren, insisted upon payment of his account, and the commissioners of the improvement district showed a disposition to hold back payment of an estimate until appellant's account should be paid. The sum of $500 was paid on the estimate to the agent of Engineering Company and there was an agreement that the balance should be held by the improvement district pending a settlement with appellant. There was no agreement, either express or implied, that the money should be appropriated to the payment of appellant's debt. The most

that can be made out of it was that the amount should be held up indefinitely until a settlement be made with appellant. This does not constitute an assignment of the amount in the hands of the improvement district nor an appropriation to the payment of appellant's debt. *Christmas* v. *Russell*, 81 U. S. 69. In the case just cited, the court said: "A mere promise, though of the clearest and most solemn kind, to pay a debt out of a particular fund, is not an assignment of the fund even in equity. To make an equitable assignment there should be such an actual or constructive appropriation of the subject-matter as to confer a complete and present right on the party meant to be provided for, even where the circumstances do not admit of its immediate exercise." Now, if the improvement district was being sued, there might be more force in the contention that the agreement to postpone payment until after settlement with appellant barred the right of the Engineering Company or its assignee to recover until after settlement with appellant; but there being no appropriation of this fund to the payment of appellant's debt, the parties to that agreement, namely, the improvement district and the Engineering Company, could have rescinded it at any moment and paid the money over to the Engineering Company or any one to whom it assigned the debt. It is not contended that appellant had any lien which he could assert against the improvement district, or that the money was held back for the purpose of enabling the improvement district to protect itself against any claim made by appellant. Appellant was not a party to that agreement, if it can be properly held in law to constitute a contract, and is therefore not in position to challenge the right of the Engineering Company or appellee, as its assignee, to collect the amount from the improvement district.

(4)    The remaining question to be determined relates to the contention of appellant that the Engineering Company forfeited its right to exist as a corporation under the laws of Oklahoma, the place of its domicile, that the forfeiture resulted *ipso facto* from the failure to com-

ply with the statute with respect to the payment of a license fee, and that its property passed into the hands of the directors as trustees for the benefit of creditors    It is contended, on the other hand, by appellee, that under the Oklahoma statute the legal existence of the corporation could not be questioned collaterally and could only be drawn into question by a suit brought at the instance of the State of Oklahoma.    The Engineering Company being a foreign corporation, the courts of this State have no right or authority to dissolve it and wind up its business, the courts of equity of this State being limited to taking charge of the property within the jurisdiction of the court and enforcing the rights of creditors here.  *Culver Lumber & Manufacturing Co.* v. *Culver,* 81 Ark. 102; *Federal Union Surety Co.* v. *Flemister,* 95 Ark. 389.   The Engineering Company existed *de facto* when all the transactions under review took place, and both parties to the present controversy dealt with it as a valid corporation and as a going concern, so to speak.   Therefore, the question of the legal existence of the corporation depends upon the Oklahoma laws as interpreted by the courts of that State.

The statutes of Oklahoma provide that every corporation organized under the laws of the State and every foreign corporation doing business therein shall "procure annually from the Corporation Commission a license authorizing the transaction of such business in this State," that such corporation shall pay a license fee of fifty cents for each one thousand dollars of authorized capital stock, and that "every domestic corporation subject to the provisions of this act, who shall fail to file the annual statement and to pay the annual fees required by the provisions of this act for sixty days after the time provided therefor, shall forfeit its charter."   Another section of the statute provides that in case of forfeiture, the directors of any domestic corporation or any foreign corporation doing business in the State "are deemed to be trustees of the corporation and all the stockholders and members of the corporation whose power or right to do busi-

ness is forfeited, and as such trustees shall have full power to settle the affairs of the corporation and to maintain or defend any such corporation, or to take such legal proceedings as may be necessary to finally settle the affairs of said corporation." Another section reads as follows: "The due incorporation of any company claiming in good faith to be a corporation under the laws of this State, and doing business as such, or its rights to exercise corporate powers can not be inquired into collaterally, in any private suit to which such *de facto* corporation may be a party; but such inquiry may be had, and action brought at the suit of the State, in the manner prescribed in civil procedure."

The Supreme Court of Oklahoma, in the case of *Higbee* v. *Aetna Bldg. & L. Assn.,* 109 Pac. 236, after quoting the statutes above, said that the corporation involved in that controversy was doing business under the laws of that State and that "the regularity of its incorporation could not be inquired into in this proceeding." In a later case, *Smith Rolfe Co.* v. *Wallace,* 139 Pac. 248, the Supreme Court of Oklahoma reviewed the statutes relative to foreign and domestic corporations doing business in the State, and announced the rule that those statutes were designed chiefly for raising revenue and that it was not the intention of the Legislature to invalidate contracts made by delinquent corporations. That interpretation is binding on us here and we are of the opinion that the courts of this State would exceed their power and jurisdiction in declaring the charter of an Oklahoma corporation forfeited contrary to the statutes of that State as interpreted by its highest judicial tribunal.

Judgment affirmed.