SOUTHERN SURETY CO. v. BERING MFG. CO. et al. (No. 8855.)

Court of Civil Appeals of Texas. Galveston. March 8, 1927.

Rehearing Withdrawn at Request of Maker May 5, 1927.

1. Assignments ⬗48—Amount due contractor, retained by owner until completion of work, held not equitably assigned for benefit of unpaid laborers and materialmen.

Provision of building contract, authorizing owner to retain 25 per cent. of payments becoming due under contract until completion of work and satisfaction by contractor of all claims for labor and material *held* not to operate as equitable assignment of retained percentage to persons holding unsatisfied claims for labor and material used in constructing building.

2. Contracts ⬗187(1)—Agreement authorizing owner to retain percentage of contract price until completion of work held for benefit of owner, who could waive provisions and pay contractor in full.

Building contract, authorizing owner to retain 25 per cent. of contract price until completion of work and satisfaction by contractor of all claims for labor and material, *held* not made for benefit of laborers and materialmen but solely for benefit of owner, who could waive provision and pay entire amount to contractor without incurring liability by reason thereof.

3. Assignments ⬗48—"Equitable assignment" requires agreement giving assignee complete present right in subject-matter, without retention of any control over fund by owner.

To constitute "equitable assignment" there must be agreement between parties by which assignee is given complete present right to subject-matter, and, if holder of fund claimed to have been assigned is left with any control over it, there is no assignment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equitable Assignment.]

**4. Assignments ⬦85—Date of creation of equitable assignments determines their priority.**

Equitable assignments have priority according to date of their creation or execution.

**5. Assignments ⬦85—Assignment of balance due contractor to surety had priority over subsequent assignment to materialman, and covered entire fund, where debt of surety exceeded fund.**

Equitable assignment by contractor to surety on his bond, of fund retained by owner under building contract made prior to assignment to materialman of same fund, has priority, and, where debt of surety exceeded amount of fund, surety was entitled to entire fund.

**6. Assignments ⬦10—Assignment by contractor to surety of funds becoming due under building contract constituted assignment of balance due coming into existence on completion of contract.**

Agreement between contractor and his surety, whereby contractor conveyed and assigned to surety, as security for indebtedness then due and subsequent indebtedness which he might incur, all payments due or to become due under building contract with owner, constituted an assignment to surety of balance due contractor, though fund was not in actual existence at time of agreement, but came into actual existence by completion of contract.

**7. Assignments ⬦10—Surety, assigned funds becoming due contractor, held entitled to balance due on completion of work, where owner was authorized to pay fund to contractor.**

Where contractor assigned all funds due or to become due under building contract to surety, and laborers and materialmen failed to fix any lien on property, thereby authorizing owner to pay contractor balance due retained until completion of building, such fund thereby passed to surety.

Graves, J., dissenting in part.

Error from District Court, Harris County; W. E. Monteith, Judge.

Suit by the South Texas Lumber Company against Andrew Ness, in which plaintiff sued out writ of garnishment against the Houston Press Company, and in which the Bering Manufacturing Company, the Southern Surety Company, and others intervened. To review the judgment; the interveners named bring separate writs of error. Proceedings consolidated. Affirmed in part; reversed and rendered in part.

King, Battaile & Sonfield, of Houston, for plaintiff in error.

Bryan, Colgin, Suhr & Bering, of Houston, for defendant in error Bering Mfg. Co.

Huggins, Kayser & Liddell, of Houston, for defendant in error Jones Lumber Co.

PLEASANTS, C. J. This litigation was begun by a suit brought by the South Texas Lumber Company against Andrew Ness to recover the sum of $1,609.80 alleged to be due upon an account for lumber and other building materials sold and delivered by plaintiff to defendant.

After the suit was filed, plaintiff therein sued out a writ of garnishment against the Houston Press Company, a private corporation domiciled in the city of Houston.

The Houston Press Company answered the writ and acknowledged an indebtedness to the defendant of $2,413.91, which it tendered into court. Thereafter the Bering Manufacturing Company, and a number of other parties having claims against the defendant Ness, intervened in the suit and asserted liens upon the fund deposited in the registry of the court by the Houston Press Company.

Such further statement of the allegations of these petitions in intervention and other pleadings in the case as may be necessary in the elucidation of the questions presented by this appeal will be hereafter made.

The petition in intervention of appellant Southern Surety Company alleges, in substance:

That on or about the 13th day of July, 1923, as surety for Andrew Ness, it executed a bond in favor of the Houston Press Company, whereby it became bound and obligated to indemnify and save harmless the Houston Press Company against any pecuniary loss resulting to said company from the breach of a contract executed by Andrew Ness for the construction of a building for the company. That, in consideration of the execution by it of the bond, Andrew Ness executed and delivered to it an instrument containing the following agreement and assignment:

"And for the better protection of said company, and as collateral security hereto, and for all claims of said surety against the undersigned, we, the undersigned, do, by these presents, as of the date hereof, hereby assign, transfer, and convey to the said company, all the right, title, and interest of the undersigned in and to all the tools, plant, equipment, and materials of every nature and description that we may now or hereafter have upon said work, or in, on, or about the site thereof, including as well materials purchased for or chargeable to said contract which may be in process of construction, in storage elsewhere, or in transportation to said site. And also we, the undersigned, do hereby convey and assign unto the said company any and all payments, funds, moneys, or property due or to become due to the undersigned as provided in said contract, and also all of our rights in and to all subcontracts which may have been or may hereafter be entered into, and the materials embraced therein."

That Andrew Ness completed the building in accordance with his contract with the Houston Press Company, and the building has been received and accepted by said company.

It is further alleged, in substance, that Andrew Ness is insolvent, and that he is in-

debted to the intervener surety company in a sum exceeding the sum paid into the registry of the court by the Houston Press Company. The prayer of the petition is that the claim upon the fund of all of the other interveners be denied and such fund be adjudged to petitioner.

In addition to its claim of lien upon the fund, the Bering Manufacturing Company pleaded an assignment by Ness on July 20, 1923, of $936 of the fund, and a further assignment in October, 1923, of $1,034.96 of said fund, which second amount assigned included the previous assigned amount of $936, and further asserted a lien upon the building and lot of the Houston Press Company to secure the amount due for material furnished the contractor and used in the construction of the building.

The Balkamp Lumber Company, another of the interveners, in addition to its claim of lien upon the fund, claimed an assignment thereof by Ness, on December 6, 1923, to satisfy its claim of $760.08.

The trial in the court below without a jury resulted in a judgment denying appellant surety company any right or interest in the fund, and apportioning the fund between the other interveners. The judgment also denied any recovery by any of the interveners against the Houston Press Company. From this judgment the Southern Surety Company and the Bering Manufacturing Company perfected separate appeals which, upon motion of the parties, have been consolidated, and will be considered and disposed of as one case.

The evidence shows that Andrew Ness on July 13, 1923, entered into a contract with the Houston Press Company for the construction of improvements upon a building owned by said company and situated on Capitol avenue in the city of Houston. At the time this contract was executed and delivered, the contractor delivered to the press company a bond executed by the Southern Surety Company to protect the press company from loss caused by the failure of the contractor to perform the obligations of his contract. The condition of the bond is as follows:

"Now, therefore, the condition of the foregoing obligation is such that, if the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law; provided, however, that this bond is issued subject to the following conditions and provisions."

The application for this bond made by the contractor, and upon which the bond was executed, contains the agreement and assignment pleaded by appellant surety company, before set out. At the time this assignment was made, Ness was indebted to the surety company in the sum of $1,550, and the company was surety for him upon another building contract upon which default had been made and for which the company was liable and was compelled to pay, prior to the trial in the court below, the sum of $1,609.81. Ness was insolvent at the time of the trial. Ness completed his contract of July 13, 1923, with the press company on October 18, 1923. An additional contract for extras on the building was entered into by the parties, under which the trial court finds that the intervener Jones Lumber Company furnished $372.20 worth of material that went into the building after October 18, 1923, the Bering Manufacturing Company $6 worth, and intervener K. W. Hille, $56 worth. The date of the completion of the contract for these extras is not shown, but the trial court finds that none of the interveners had filed their claims or taken any action to fix a lien upon the building to secure the payment of their claims.

When the original contract was completed on October 18, 1923, in order to obtain a payment of $6,000 from the press company on his contract, the contractor Ness got the Bering Manufacturing Company, the Balkamp Company, and several of the other interveners herein to execute the following release, which was delivered to the press company:

"We hereby release the Houston Press Company, Inc., from all claims for labor and material furnished by us on their office building located at 405 Capitol avenue, Houston, Tex., and hold Andrew Ness and Southern Surety Company for all claims."

In order to obtain this release, Ness promised the interveners who executed it that he would pay them out of the money received by him from the press company, but failed to make such payment.

When the contractor sought to purchase material for the building from the Bering Manufacturing Company he was informed that they would require security before filling his bill. In response to this demand, he gave the company a letter to the architects who supervised the construction of the building for the press company, and upon whose certificates all payments were made to the contractor, directing them to pay the Bering Manufacturing Company the sum of $936 out of money that would be due him under his contract. This letter was written on July 23, 1923. A similar letter to these architects was given the Bering Company on December 10, 1923, directing a payment to the Bering Company for $1,034.96. This $1,034.96 included the $936 for which the first order or letter was given. The press company knew that these letters were on file with the architects, and when the last letter was presented it stated that the money would be paid in a few days.

On the 6th of December, Ness gave an order on the press company in favor of the intervener Balkamp Lumber Company for $705.83.

This order was delivered to an agent of the press company who had authority to accept it. The writ of garnishment had been served on the press company before these orders of December 10 and December 6; just mentioned, were presented to that company.

The building contract executed by Ness contains the following provisions:

"Art. IX. It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be $20,712.00 (twenty thousand seven hundred twelve dollars), lawful money of the United States, subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the owner to the contractor in current funds and only upon certificates of the architect as follows: The contractor is to receive seventy-five per cent. on work and material furnished on the grounds, and in the building during the progress of the work, the remaining twenty-five per cent. to be paid on completion and acceptance of the building by the owner and the architect. The contractor must furnish receipted bills of all material before final certificate is paid. The final payment shall be made within five days of the completion of the work, included in this contract, and all payments shall be due when certificates for the same are issued.

"If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default."

Upon these facts the trial judge made the following conclusions of law, upon which the judgment rendered is based:

"(1) I conclude that the contract between the Houston Press Company and Andrew Ness constitutes an equitable assignment in favor of the materialmen and laborers of 25 per cent. of the contract price for said improvements prior to the assignment claimed by intervener Southern Surety Company, and that the Southern Surety Company is not entitled to participate in the distribution of any part of the $2,541.98 deposited in this court by the Houston Press Company.

"(2) That the various interveners herein who furnished labor and material that went into said improvements, having failed to file their claims and protect their liens as provided by statute, are not entitled to recover from the Houston Press Company, and that the Houston Press Company is discharged from all liens or claims of liens asserted by any of the parties to this suit.

"(3) That all interveners who have furnished labor and material prior to October 18, 1923, should be awarded payment of the pro rata amounts of the balance of $2,124.98 in the registry of the court in proportion that their respective claims bear to said $2,124.98.

"(4) That the interveners Jones Lumber Company, Bering Manufacturing Company, and K. W. Hille, who furnished material and labor for the Houston Press Company building after October 18, 1923, should be awarded payment of the pro rata amounts of $417 in the registry of the court in the proportion that their respective claims bear to said $417."

[1] The appellants, Southern Surety Company and Bering Manufacturing Company each assail the conclusion of the trial court that the provision of the building contract authorizing the retention by the owner of 25 per cent. of the payments becoming due under the contract until the completion of the work and the satisfaction by the contractor of all claims for labor and material furnished in the construction of the building, operated as an equitable assignment of the retained percentage to those holding unsatisfied claims for labor or material used in the construction of the building.

We agree with the appellants that this provision of the contract cannot be construed as an equitable assignment of the fund in question.

[2] The agreement for the retention by the owner of the 25 per cent. of the contract price was not with any of the appellees, nor for their benefit, but solely for the benefit and protection of the owner. The press company could have waived the benefit of such provision and paid the full amount of each installment due the contractor upon the estimates of the architects without incurring any liability by reason of such payments. If, in such case, the contractor failed to pay the laborers and materialmen, they could have fixed a lien upon the building, but this liability of the owner would arise from the statute giving such lien, and not because he had paid money to the contractor which had been assigned by him to laborers and materialmen.

[3] To constitute an equitable assignment, there must be an agreement between the parties by which the assignee is given a complete present right in the subject-matter, and, if the holder or owner of the fund claimed to have been assigned is left with any control over it, there is no assignment.

In the case of Harlowe v. Hudgins, 84 Tex. 107, 19 S. W. 364, 31 Am. St. Rep. 21, our Supreme Court defines the word "assignment" as meaning the act or acts "by which one person transfers to another or causes to vest in another his property or an interest therein." The test of whether an agreement or direction as to the disposition of a fund can be held an assignment is thus stated in Lanigan v. Bradley, 50 N. J. Eq. 201, 24 A. 505:

"Does the contract or arrangement in question authorize the depositary of the fund to pay it directly to the creditor or party claiming as assignee without the further intervention of the debtor or party originally entitled to it?"

Other cases which apply the same test are Smedley v. Speckman (C. C. A.) 157 F. 815, and Dickey v. Southwestern Surety Co., 119 Ark. 12, 173 S. W. 398, Ann. Cas. 1917B, 634. In the case last cited the court, in discussing the agreement there in question, say:

"The most that can be made out of it was that the amount should be held up indefinitely until a settlement be made with appellant. This does not constitute an assignment of the amount in the hands of the improvement district, nor an appropriation to the payment of appellant's debt. Christmas v. Russell, 81 U. S. (14 Wall.) 69 [21] 20 L. Ed. 762. In the case just cited, the court said: 'A mere promise, though of the clearest and most solemn kind, to pay a debt out of a particular fund, is not an assignment of the fund even in equity. To make an equitable assignment there should be such an actual or constructive appropriation of the subject-matter as to confer a complete and present right on the party meant to be provided for, even where the circumstances do not admit of its immediate exercise.'"

This rule of construction is also given in R. C. L. "Assignments," pp. 909, 910; Pomeroy, Eq. Jur. vol. 3, p. 1280.

We have found no authority under which the agreement in this case can be held an assignment by Ness to the laborers or materialmen to whom he was indebted of the fund retained by the press company under the building contract.

[4] Both appellants further agree in the proposition that equitable assignments have priority according to the date of their creation or execution. This is a well-established rule of decision in this state. Harris County v. Donaldson, 20 Tex. Civ. App. 9, 48 S. W. 791; Engineering Co. v. Turney, 110 Tex. 148, 216 S. W. 621; Colleps v. Smith Lumber Co. (Tex. Civ. App.) 185 S. W. 1043.

[5] Under this rule, if the provisions in the application made by the contractor Ness to appellant surety company for the bond executed by it constitute an equitable assignment of the fund retained by the press company under the provisions of the building contract, such assignment, being prior in date to the assignment to the Bering Manufacturing Company, must be given priority of payment, and, the debt found by the trial court to be due the surety company by the contractor being in excess of the fund, all of the fund should be adjudged to that company.

[6, 7] When Ness, as part of the consideration for the execution of the surety bond by the appellant surety company, "conveyed and assigned unto the said company," as security for indebtedness then due by him to the company and any subsequent indebtedness which he might incur to it, "any and all payments, funds, moneys, and property due, or to become due," to him under his building contract with the press company, he thereby assigned the fund in question in this case. The validi-

ty of the assignment is in no way affected by the fact that there was no fund in actual existence at the time it was made. The fund had a potential existence arising out of the contract between Ness and the press company, and, having come into actual existence by the completion of the contract by Ness, and appellees having not only failed to fix any lien upon the property of the press company and thereby authorized that company to retain the fund for its protection, but expressly released the press company from all liability and authorized the payment of the fund to Ness, such fund passed to the appellant surety company by the express terms of its contract with Ness.

This conclusion requires that the judgment of the trial court, distributing the fund among the appellees named in the judgment, be reversed, and judgment here rendered in favor of the appellant Southern Surety Company for all of the fund in the registry of the court. The judgment in favor of the press company is affirmed. That portion of the judgment disposing of other parties to the suit who are not parties to this appeal is undisturbed.

Justice GRAVES dissents from the holding that the appellant surety company is entitled to the fund under its assignment from Ness.

Reversed and rendered in part, and affirmed in part.