on the fact that the uncle was not called as a witness or his absence accounted for cannot be regarded as misconduct of the jury. See Jones v. State, 7 Tex. App. 105; Ables v. State, 77 Tex. Cr. R. 302, 177 S. W. 1164; Underhill's Crim. Ev. (3d Ed.) § 45.

[4-6] Ordinarily, when the members of the jury, in discussing the case in their retirement, advert to those things alone which took place in their presence upon the trial, their arguments based thereon are not the proper subject of inquiry in attacking the verdict. They are not within any of the provisions of the statute stating the grounds of a new trial. See Todd v. State, 93 Tex. Cr. R. 553, 248 S. W. 695; Jack v. State, 20 Tex. App. 660. When the mandate of no statute has been violated, the alleged misconduct of the jury as a ground for a new trial is left primarily to the discretion of the trial judge, and, unless there is an abuse of the discretion, the reviewing court is not authorized to disturb the verdict. See Reese v. State, 87 Tex. Cr. R. 245, 220 S. W. 1096; Watson v. State, 82 Tex. Cr. R. 305, 199 S. W. 1113; Todd v. State, supra. In overruling the motion in the present case, we have perceived no abuse of the discretion.

Finding no error presented for review, the judgment is affirmed.

---

AUSTIN, Banking Commissioner, v. PUBLIC NAT. BANK OF HOUSTON. (No. 9045.)

Court of Civil Appeals of Texas. Galveston. Jan. 19, 1928.

Rehearing Denied Feb. 9, 1928.

I. **Banks and banking** ⊚⟶63½—**Banking commissioner was estopped from countermanding payment of state bank's drafts cashed by national bank one day before he took possession (Rev. St. 1925, arts. 444, 451).**

Where state bank had agreement with national bank under which it deposited foreign credits in St. Louis bank and national bank would cash drafts on St. Louis bank against fund created by credits, commissioner of banking was estopped to countermand payment of drafts drawn by state bank on St. Louis bank and state trust company on day before and last day state bank was open, which were paid by national bank and proceeds thereof used by state bank, where commissioner, in practical superintendence of state bank and familiar with its business, permitted it to continue business until after drafts were drawn and cashed; commissioner not being exempted from defense of estoppel by any duty required of him, under Rev. St. 1925, art. 451, and under article 444 his acquirement of deposit would not have aided state treasury, but would only have relieved other banks from proportional contribution to guaranty fund.

**2. Assignments ⏕49—Draft drawn by state bank on trust company and cashed by national bank held not assignment pro tanto of bank's deposit (Rev. St. 1925, art. 5940, § 127).**

Where national bank without other arrangement or agreement cashed draft of state bank drawn on trust company, under Rev. St. 1925, art. 5940, § 127, the draft was not an assignment pro tanto of state bank's deposit with trust company.

**3. Assignments ⏕49—State bank's drafts on St. Louis bank, cashed by national bank under agreement, held pro tanto assignment of state bank's deposit (Rev. St. 1925, art. 5940, § 127).**

Where state bank had agreement with national bank to deposit foreign credits with St. Louis bank and national bank would cash state bank's drafts drawn on St. Louis bank, when national bank cashed drafts on St. Louis bank drawn by state bank without knowledge of insolvency of state bank and in furtherance of agreement, the agreement together with the cashing and delivery amounted to an assignment of state bank's deposit and took transaction out of Rev. St. 1925, art. 5940, § 127, providing that bill does not operate as assignment of funds in drawee's hands.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by the Public National Bank of Houston, Tex., against Charles O. Austin, Banking Commissioner of Texas, and others. From the judgment rendered, the named defendant appeals, and plaintiff files a cross-assignment Affirmed in part, reversed in part, and rendered for plaintiff.

Chas. O. Guynes, of Houston, and John W. Goodwin, of Austin, for appellant.

Richard T. Fleming and Henry J. Dannenbaum, both of Houston, for appellee.

GRAVES, J. In addition to protective relief against the various parties herein named pending final hearing, the Public National Bank of Houston, as plaintiff in this action against all the others mentioned as defendants, sought a decree requiring the National City Bank of St. Louis and the San Jacinto Trust Company of Houston to severally pay over to it the sums of $12,500 and $2,000, respectively, free from any claims thereto on the part of the American State Bank of Harrisburg, Tex., and of the banking commissioner of Texas, Charles O. Austin, upon this state of facts:

During the summer of 1924 an agreement was made between the Harrisburg bank and the Public National whereby, to meet the oft-recurring exigencies of the former's business and enable it to always have ready cash on hand in Houston when needed, deposits of its foreign or out-of-Texas credits would be made and kept in the St. Louis bank as the basis on which the latter (the Public National)

would cash on presentation the drafts given it by the Harrisburg bank on the St. Louis bank against the fund created by such deposits, it being understood that the Public Bank would always cash such drafts as and when so sold to it and, in turn, that the Harrisburg bank would always maintain sufficient deposits in the St. Louis bank to meet the drafts when thus presented; while these St. Louis deposits were also, from time to time, drawn against by the Harrisburg bank for other purposes, there was no evidence nor indication that it had any right to do so in violation of its undertaking with the Public National to maintain them as a fund sufficient for the satisfaction of all drafts to be so cashed by the latter.

No open credit was ever given by the Public National to the Harrisburg bank, but, pursuant to and in accordance with this agreement, business relations between these two banking parties to it continued from its inception till February 21, 1925, the Harrisburg bank depositing its intra-Texas, or local items, in the Public National and checking out the proceeds in regular course, while during the same period depositing its extra-Texas, or foreign items, with the St. Louis bank and from time to time drawing drafts against such deposits in favor of the Public National, which the latter always on presentation to it either cashed or credited to the account of the Harrisburg bank; the St. Louis bank, in its turn, always promptly paid these drafts so drawn upon it until those here involved were presented, the payment of which was prohibited by order of appellant, banking commissioner.

We quote as further facts these unchallenged statements in the appellee's brief:

"In September, 1924, the officials of the state banking department examined the affairs of the Harrisburg bank, and expressed some criticism of the amount of its bad paper. They returned about February 1, 1925, and made another examination, apparently at intervals, and while engaged in other duties. On Thursday, February 19, 1925, two days before the Harrisburg bank was taken over by the banking commissioner, one of the officers making such examination called a meeting of the directors of the bank, which was held the same day, at which meeting he explained that a mistake was made at the examination conducted in the preceding month of September; that more of the bank's paper was bad than had been supposed. The official agreed to give the directors five days in which to raise funds to replenish the depleted assets. Consideration began among the directors as to the best method to be pursued, whether to advance cash, or to increase the capital stock of the bank. That the bank was insolvent was not disputed; its continuance depended on the raising of additional funds. There was another meeting between the department officials and the directors at 1:30 o'clock Saturday afternoon, February 21, 1925. At 6 o'clock that afternoon, the bank examiner,

for reasons satisfactory to himself and doubt-less sufficient, ordered the bank closed and took charge of its property and effects.

"On Friday, February 20th, the Public Bank received the Harrisburg bank's draft on the St. Louis bank in the amount of $5,000, and on Saturday, the 21st, two drafts on the same bank, one for the sum of $2,500, and one for the sum of $5,000. Upon receipt of these drafts, the Public Bank either paid the face value thereof in cash to the Harrisburg bank, or credited the amount to it, the deposit thereof having been fully withdrawn through checks or drafts when the Harrisburg bank was taken over by the banking commissioner. These drafts were duly forwarded by the Public Bank to St. Louis for payment by the National City Bank, but payment was refused for the reason that the latter had received orders from appellant not to pay them.

"On Saturday, February 21, 1925, the Harrisburg bank had on deposit with the San Jacinto Trust Company of Houston, Tex., the sum of $4,000. It had been there a long time; it was a part of the bank's reserve; it was an emergency fund, subject to be drawn out at any time. On that day the cashier of the Harrisburg bank got the notion that he had better have some extra money on hand. 'On account of the situation, the examination and the holding on the board meeting there on Saturday, I just wanted a little extra amount of money there that day, in case anybody took a notion to draw out their balance.' He sent to the Public Bank a draft on the San Jacinto Trust Company, of Houston, Tex., for the sum of $2,000 and received therefor from the Public Bank the sum of $2,000 in cash. On the notice and order of appellant, the trust company refused to pay the draft when presented.

"The Public Bank had no knowledge of the examinations made of the Harrisburg bank by the representatives of the state banking commissioner, of the condition of the Harrisburg bank disclosed by such examination, nor of the negotiations between such representatives and the directors of that bank. When the drafts in controversy were cashed by the Public Bank, the officials of the Harrisburg bank thought that the latter could raise the money necessary to satisfy the banking commissioner. The bank examiner was not told that the drafts would be drawn. At the same time he did not instruct the bank not to draw any drafts. The books of the bank were accessible and were checked by the examiners; they made inquiries about various entries, and went over everything. This continued for three weeks prior to the closing of the bank. The transactions in question, the drawing of the three drafts on the St. Louis bank and the draft on the San Jacinto Trust Company, and the cashing thereof by the Public Bank, were entered on the books of the Harrisburg bank daily as they occurred. They showed credits to the National City Bank of the drafts delivered to appellee. They appeared in the daily cash book on February 21st. The question of the Harrisburg bank's continuing to receive deposits, pending plans for raising money, was discussed on Friday night, February 20th. The bank examiner answered that, so far as the department was concerned, there would be no question raised because of the law, 'There would be no pros-

2 S.W.(2d)—30

ecutions.' The cashier answered, 'All right, we will run to-morrow.' "

There were then, and when the payment thereof was stopped by appellant, ample funds to the credit of the Harrisburg bank in the St. Louis bank and the San Jacinto Trust Company to meet these several drafts so drawn by it upon them, respectively, and the drawees refused payment solely because of his order to do so.

The suit was subsequently dismissed as to both the St. Louis and Harrisburg banks, because the former was beyond the court's jurisdiction, and the latter, having been taken over by the banking commissioner, was superseded by him; the trust company became a nonactive party by tendering into court the $2,000 it admitted so having on deposit to the credit of the Harrisburg bank, with request that the proper parties be required to interplead respecting it, and the cause then went to trial before the court without a jury between the banking commissioner and the Public National Bank, appellant and appellee here, respectively, as the contending litigants.

The court entered judgment in favor of appellee against appellant "for the title and possession of $12,500 of the amount on deposit with the National City Bank of St. Louis, Mo., to the credit of the American State Bank of Harrisburg, Tex.," and in favor of appellant against appellee and the San Jacinto Trust Company of Houston, Tex.," for the title and possession of the deposit in the hands of the San Jacinto Trust Company."

Both parties complain upon appeal (the appellee through a cross-assignment), each contending that he should have been vested with the title and possession of all the deposits, instead of as decreed.

[1] On review, this court agrees with the appellee that judgment should have been in its favor for the trust company deposit also; in addition to findings of fact, of which—on what are thought to be the controlling issues of the cause—those hereinbefore stated are an abridgment, the learned trial judge filed conclusions of law to the effect that, in the circumstances so found, the drawing and cashing at Houston of the drafts on the St. Louis bank under the prior agreement for the maintenance there of sufficient funds to meet them created in law an assignment pro' tanto of the deposits therein to the credit of the Harrisburg bank in favor of the Public National, but that no assignment or lien in the latter's favor arose from the drawing and cashing of the draft on the San Jacinto Trust Company, because there was as to it no such agreement; this court approves all these conclusions, but reaches an additional one of its own, and that is that appellant, under the undisputed facts cited upon this phase of the controversy, was estopped to

claim the right to countermand the payment of any one of the four drafts involved.

The reasons for this last-stated holding are well outlined in the appellee's brief, substantially as follows:

"The four drafts in controversy having been cashed by appellee after the appellant had ascertained and determined the insolvency of the Harrisburg bank, the continued operation of that bank on February 20 and 21, 1925, after such insolvency was ascertained and determined being with the permission of appellant and in furtherance of a mutual plan between him and them to enable the directors of the bank to restore its depleted assets, and such continued operation being necessary for the execution of the plan, appellee having no knowledge of the existence of such insolvency and plan, but, relying upon the continued operation of the bank as a going concern and led thereby to cash the drafts in controversy, appellant, as the legal representative of the state bank guaranty fund, as well as of the stockholders and creditors of the Harrisburg bank, is estopped from countermanding payment of these drafts on the part of the respective drawees."

While the evidence furnishes no basis whatever for impugning the purposes of the banking commissioner in permitting the bank to remain open and transact its accustomed business in the usual way on the two days in February, 1925, during which these drafts were so drawn and cashed, his resulting position in having done so, with the lights before him that the undisputed evidence cited disclosed, was not dissimilar to that of a bank receiving deposits while in a failing condition; to all intents and purposes he was the bank during that period, although its assets may not be said to have been actually in custodia legis until 6 o'clock p. m. on the latter of these two days, February 21, when he ordered the bank closed; it seems plain that in like circumstances, the officers, stockholders, creditors, depositors, and others primarily interested in and controlling the institution would have been estopped, and no sufficient reason occurs for not concluding that their alter ego at the time, the banking commissioner, was likewise so; he but represented them in so assuming to direct the institution's policies, and can be said to have then neither had other interest than their benefit nor enjoyed immunities they did not possess; it is immaterial that his examiner was not told in advance that these drafts would be drawn—he had all the information in hand that would have put a prudent man on inquiry, and both could and should have reasonably anticipated that just such a result would probably flow from his express permission to the cashier of the bank to continue operating and receiving deposits throughout the day of Saturday, February 21; having thus in a measure become a silent partner in the Harrisburg bank's so acquiring from the appellee as deposits for itself the sums represented by these four drafts,

when he came to close it for liquidation he further knew—or at least was charged with knowledge of the fact, because its daily records and books, which had then for three weeks been under his espionage, so showed—that the latter had already gotten the full benefit of the cash proceeds of all these drafts and had used all or part of them in its last-minute efforts, that appellant himself had so signally aided, to satisfy its creditors; the returns from one of them having gone to pay the bank's obligation to the Federal Reserve Bank, while those from the other three on the day of their dates went into its coffers and were either checked out again to creditors, or were left there as a part of the $13,180.76 of the bank's assets that came into appellant's hands when he took it over for liquidation.

Apparently no general state interest or policy exempted the banking commissioner from this invoked defense in equity against his peremptory act in stopping these payments, because, under a provision of the Bank Deposit Guaranty Law he was administering (R. S. [1925] art. 444), his acquirement of them would not have aided the state treasury any, but would merely have relieved the other state banks, pro tanto, from proportionately contributing to any deficit that might occur in the guaranty fund provided by that statute.

Under such a state of facts, we think the general principles of equity interdicted the appellant from asserting any right, in virtue of his authority as liquidating agent, to stop payment upon any of these drafts.

[2] Our statute (R. S. art. 5940, § 127) seems to directly support the trial court's conclusion that the draft to the trust company did not operate as an assignment of the $2,000 in its hands, there being nothing shown in that instance other than the bill itself.

[3] As concerns the remaining three to the St. Louis bank, however, the prior agreement between the two banks concerned as to the redemption fund for them, we think, added to the delivery and cashing of them the necessary element to take that transaction out of the operation of this statute; under the arrangement thus agreed upon and consummated, it seems clear to us that the St. Louis bank was authorized to pay these drafts to the appellee out of the Harrisburg bank's funds in its hands without any further intervention of the latter, thereby meeting the definition of an assignment approved by this court in Southern Surety Co. v. Bering Mfg. Co., 295 S. W. 337.

These conclusions require that so much of the judgment below as was in favor of the appellee be affirmed, and that so much of it as denied it a recovery upon the $2,000 draft of the trust company be reversed, and the cause in that respect rendered here in its favor; it will be so ordered.

Affirmed in part; reversed and rendered in part.

### On Motion for Rehearing.

Inveighing on rehearing against the statement in our original opinion that he "was estopped to claim the right to countermand the payment of any one of the four drafts involved," appellant invokes R. S. art. 451, as expressly enjoining that action upon him as an official duty; the argument fails, we think, for two reasons: In the first place, that statute only requires the commissioner to give notice to those "holding or in possession of any assets of such insolvent bank," and these deposits—at least those in the St. Louis bank—as a result of the acts of the banking commissioner, through his representatives, were no longer part of the assets of the Harrisburg bank; in the second place, the objection reaches a possible inaccuracy in statement only, since in legal effect the holding of this court simply was that the banking commissioner was in this litigation estopped to assert any right to the deposits.

Being unconvinced of error in the former disposition, the motion for rehearing will be overruled.

Overruled.